David ALLHUSEN, M.S.S.W., an individual; Casper Psychological Services, a Wyoming professional corporation; George Conner, an individual; Jennifer Korb, an individual; and similarly situated John Does and Jane Does 1 through 100, Appellants,

v.

The STATE of Wyoming, acting By and Through the WYOMING MENTAL HEALTH PROFESSIONS LICENSING BOARD, Appellee.

No. 94–36.

Supreme Court of Wyoming.

June 23, 1995.

Michael Rosenthal of Hathaway, Speight, Kunz & Trautwein, Cheyenne, and Charles S. Chapin of Crowell & Chapin, P.C., Casper, for appellants.

Joseph B. Meyer, Atty. Gen.; Mary B. Guthrie, Deputy Atty. Gen.; Ron Arnold, and William G. Hibbler, Sr. Asst. Attys. Gen., for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

THOMAS, Justice.

At issue in this case is the state constitutionality of the licensure provisions,[1] the prerequisites to licensure,[2] and the licensure exemptions[3] set forth in the Mental Health Professions Practice Act (MHPPA).[4] The issue arises primarily under the equal protection and uniform operation of the laws requirements found in the Constitution of the State of Wyoming. It occurs in the context of the licensure of mental health professionals and disparate treatment of unlicensed counselors employed by private, for-profit institutions and unlicensed counselors employed in public institutions, public and private educational institutions, including students, interns or trainees pursuing a course of study in the regulated professions in an accredited institution, and miscellaneous others. Reliance is placed by the parties upon various other state constitutional provisions. We hold the statutory provisions violate the constitutional mandate for equal protection of the laws, and the numerous other claims are subsumed by the equal protection analysis. While it did certify to this court the constitutional questions, the trial court articulated its conclusion that the provisions at issue are unconstitutional and issued a Temporary Restraining Order and Preliminary Injunction inhibiting the enforcement of the provisions. We agree with the conclusion of the trial court, although on more limited grounds, and

1. Wyo.Stat. § 33–38–110 (Supp.1994).

2. Wyo.Stat. § 33–38–106 (Supp.1994).

3. Wyo.Stat. § 33–38–103 (Supp.1994).

4. Wyo.Stat. §§ 33–38–101 to –112 (Supp.1994).

in response to the Order Certifying Questions to the Supreme Court, we hold the statutory scheme is unconstitutional.

Pursuant to WYO.R.APP.P. 11, the trial court certified to this court the following questions:

1. Do the licensure provisions (W.S. § 33–38–110), prerequisites to licensure (W.S. § 33–38–106), and licensure exemptions (W.S. § 33–38–103) of the Mental Health Professions Practice Act:

(a) Violate Article 1, Section 2 of the Wyoming Constitution by denying Plaintiffs' equal protection of the law?

(b) Violate Article 1, Section 6 of the Wyoming Constitution by denying Plaintiffs due process of law?

(c) Violate Article 1, Section 7 of the Wyoming Constitution by imposing arbitrary power over the lives and property of the Plaintiffs without cause?

(d) Violate Article 1, Section 34 of the Wyoming Constitution by lacking uniform operation?

(e) Violate Article 3, Section 27 of the Wyoming Constitution by amounting to special legislation granting special or exclusive privileges and immunities where a general law could be enacted?

(f) Violate Article 1, Section 35 of the Wyoming Constitution by violating the rights and obligations of contracts *ex post facto?*

(g) Amount to prohibited "fencing" legislation?

(h) Deny Plaintiffs' fundamental property rights, liberties and privileges?

(i) Create unconstitutional classifications by exempting from regulation a class of similarly-situated individuals who provide the same services to the public as the Plaintiffs who are restricted from doing so under the provisions of the MHPPA?

2. Is the MHPPA so vague as to deny uniform enforcement without legislation on the part of the Administrative Board?

3. Will enforcement of the MHPPA adversely affect the health and welfare of Wyoming citizens in need of emotional and mental assistance?

The preceding questions encompass all of the issues in the case, and no additional issues are suggested by any party.

We are not advised of the reason for pursuing this case under WYO.R.APP.P. 11[5] rather than WYO.STAT. § 1–13–101 (1988).[6] We understand WYO.R.APP.P. 11 to be broader in its application than WYO.STAT. § 1–13–101 and, in view of its specific nature, the statutory procedure should be invoked for the reservation of constitutional questions. We will consider the questions certified in this case, however, because the statutory provisions were substantially met.

In such an instance, we rely entirely upon the factual determinations made in the trial court. As set forth in the Order Certifying Questions to the Supreme Court, they are:

In 1987, the Wyoming Legislature enacted the "Professional Counselors, Marriage and Family Therapists, Social Workers and Chemical Dependency Specialists Act." (Laws 1987, Ch. 239, § 1, codified as W.S. § 33–38–101, *et seq.*) Under this Act, a licensure procedure was available, but not required, for mental health professionals practicing in the state of Wyoming.

In 1993, the Legislature passed several amendments to the Act, including changing its name to the "Mental Health Professions Practice Act" (MHPPA). The 1993 amendments (Laws 1993, Ch. 181, §§ 2 and 3) for the first time made licensure mandatory for mental health professionals practicing in the state of Wyoming (W.S. § 33–38–110(a)(i)). However, the 1993 amendments also exempted from the licensure requirements a large group of persons providing counseling activities and services to the public, including people employed by any federal or state agency or any political subdivision thereof, or public or private educational institutions, students, interns or trainees pursuing a course of study in the regulated profes-

---

**5.** Certification of Questions of Law.

**6.** Chapter 13, Reservation of Question to Supreme Court. Constitutional questions, generally.

sions in an accredited institution of higher education or training institution, clergymen, or persons providing volunteer or professional services for public and private non-profit organizations or charities (W.S. § 33-38-103(a)(i)-(vi)). Additionally, the 1993 amendments enlarged the number of hours of supervised clinical experience and supervision required of applicants for licensure before they could qualify to take the licensure examination (W.S. § 33-38-106(b)).

The licensure requirement of the MHPPA set out in W.S. § 33-38-110(a)(i), prohibits unlicensed counselors from having direct patient contact, even if that contact is under the direct supervision of a counselor already holding a valid Wyoming license. Persons violating the Act are subject to criminal prosecution which can lead to felony convictions and imprisonment for not more than two years and a fine of not more than $2,000 for each violation (W.S. § 33-38-110(e)).

As of the July 1, 1993, effective date of the MHPPA, Plaintiffs [7] Allhusen, Conner and Korb were all employed as counselors and had all previously received Masters Degrees in various counseling fields. Plaintiffs Allhusen and Korb had not yet achieved the number of hours of clinical experience necessary to qualify to sit for the licensure examination. Plaintiff Conner had amassed the requisite number of hours of clinical experience, but the Mental Health Professionals Licensing Board informed Plaintiff Conner that, despite receiving a Masters Degree in Psychology, he would need to receive additional hours of education before being allowed to sit for the licensure examination.

Plaintiff Casper Psychological Services, P.C., employed Plaintiffs Conner and Korb to provide counseling services to the public directly and through a contract with Crestview [Crest View] Hospital and Counseling Center of Casper, Wyoming. Under the terms of this contractual relationship, Casper Psychological provided counseling ser-

vices to eight to ten patients at Crestview Hospital on an average daily basis.

Plaintiff Allhusen was employed directly by Crestview Hospital and Counseling Center and, before the controversy which gave rise to this litigation arose, provided counseling services as a social worker at Crestview under the supervision of a Licensed Professional Social Worker as well as licensed psychiatrists and medical doctors.

Section 33-38-105 of the MHPPA requires the Board to "adopt rules not inconsistent with this Act or the laws of this state that are reasonable and necessary to administer this Act." As of the July 1, 1993, effective date of the Act, the Board had not adopted any rules or regulations by which to administer the Act. The Board adopted "Emergency Rules and Regulations" on October 18, 1993, after this action was filed, and without the benefit of public comment or a public hearing.

After the July 1, 1993, effective date, several inquiries were directed to the Mental Health Professions Licensing Board and its attorney by the administrators and counsel for Crestview Hospital and Counseling Center concerning the status under the MHPPA of persons like Plaintiffs Allhusen and Korb, new graduates having less than 3,000 post-graduate clinical hours of experience and, thus, not eligible under the Act to sit for the licensure examination. The Board, through its Administrative Officer, informed Crestview that these persons would not be eligible or qualified for supervised practice in non-exempt, private, for-profit counseling institutions such as Crestview. Crestview was informed by the Board's Administrative Officer that "new graduates will need to seek employment in exempted areas (meaning not-for-profit, government or educational institutions) in order to build the necessary hours required" to qualify to take the licensure examination.

Crestview was further informed by the Board that it would not allow any non-licensed counselors or new Masters-level

---

7. For convenience, the individual and corporate plaintiffs will be referred to as plaintiffs in the course of our opinion unless specificity is required.

graduates to practice professional counseling in for-profit institutions. On September 16, 1993, Crestview was informed by the Licensing Board's attorney that non-licensed mental health professionals, including those who had completed Masters Degrees and were working towards licensure, could not offer professional counseling services in private, for-profit institutions until they were actually licensed. The Board's attorney indicated that such individuals could practice in public or non-profit organizations under the supervision of licensed individuals to acquire the requisite number of hours of practical counseling experience to qualify to take the licensure examination, but not at a private, for-profit mental health facility, such as Crestview Hospital and Counseling Center.

The MHPPA, WYO.STAT. § 33–38–101 to –112 (Supp.1994), after defining board, counseling procedures, licensed professional counselors, and various styles of practice (WYO.STAT. § 33–38–102), initially provides for exemptions. The exemptions provision is the crux of this action, and it provides as follows:

(a) Nothing in this act shall be construed to apply to the activities and services of:

(i) Qualified members of other legally recognized professions, such as physicians, psychologists or registered nurses, from performing services consistent with the laws of this state, their training and the code of ethics of their professions, provided they do not represent themselves to be practicing the professions licensed under this act and do not represent themselves to be counselors, clinical social workers, marriage and family therapists or addiction therapists;

(ii) Persons who use an official title and are employed by any federal or state agency or any political subdivision, or public or private educational institution, provided those persons are performing professionally- related activities within the scope of their employment;

(iii) A student, intern or trainee pursuing a course of study in these professions in an accredited institution of higher education or training institution, if these activities are performed under supervision and constitute a part of the supervised course of study, provided that such a person be designated a "counselor intern", "social work intern", or "marriage and family intern";

(iv) Nonresidents who render services in this state for not more than thirty (30) days during any calendar year, provided that the persons are duly authorized to perform the activities and services under the laws of the state or county of the person's residency;

(v) A rabbi, priest, minister or clergyman of any religious denomination or sect provided the activities and services are within the scope of the performance of regular or specialized ministerial duties;

(vi) Persons offering volunteer or professional services for public and private nonprofit organizations or charities provided that these persons are approved by the organizations or agencies for whom the services are rendered.

WYO.STAT. § 33–38–103 (Supp.1994).

The MHPPA then provides for the creation of the board (WYO.STAT. § 33–38–104); the powers and duties of the board, including its rules, meetings, and fees (WYO.STAT. § 33–38–105); and requirements for licensure (WYO.STAT. § 33–38–106). In addition to requirements relating to age, character, education, and examination, the licensure provision also provides, in pertinent part:

Before admission to the licensure examination applicants shall demonstrate that they have completed three thousand (3,000) hours of supervised clinical experience including a minimum of one hundred (100) hours of face-to-face individual clinical supervision from a supervisor meeting qualifications established by the board.

WYO.STAT. § 33–38–106(b) (Supp.1994).

The statute then provides for reciprocity (WYO.STAT. § 33–38–108) and confidentiality of information communicated by a client (WYO.STAT. § 33–38–109).

In WYO.STAT. § 33–38–110, the legislature articulates prohibited acts, causes for revoca-

tion or suspension of a license, how proceedings brought with respect to licenses shall be conducted, and provides for misdemeanor and felony penalties. The prohibited acts include:

(a) No person shall:

(i) Engage in the practice of professional counseling, clinical social work, marriage and family therapy or addictions therapy unless licensed to so practice under this act or to represent himself to the public as being licensed as a professional counselor, a clinical social worker, a marriage and family therapist or as an addiction therapist without having first complied with this act * * *.

WYO.STAT. § 33–38–110(a) (Supp.1994).

WYO.STAT. § 33–38–111 articulates the requirements for professional disclosure, and WYO.STAT. § 33–38–112 requires limitation of practice.

■ Equal protection "mandates that all persons similarly situated shall be treated alike, both in the privileges conferred and in the liabilities imposed." *Small v. State,* 689 P.2d 420, 425 (Wyo.1984) (quoting *State v. Freitas,* 61 Haw. 262, 602 P.2d 914, 922 (1979)). In this regard, we have held the Wyoming Constitution offers more robust protection against legal discrimination than the federal constitution. *Wilson v. State ex rel. Office of Hearing Examiner,* 841 P.2d 90 (Wyo.1992); *Johnson v. State Hearing Examiner's Office,* 838 P.2d 158 (Wyo.1992); *Washakie County Sch. Dist. No. 1 v. Herschler,* 606 P.2d 310 (Wyo.1980), *cert. denied,* 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980); *Nehring v. Russell,* 582 P.2d 67 (Wyo.1978).

■ In this case, we attach import to the following provisions of the Constitution of the State of Wyoming:

**WYO. CONST. art. 1, § 2 Equality of all.**

In their inherent right to life, liberty and the pursuit of happiness, all members of the human race are equal.

**WYO. CONST. art. 1, § 34 Uniform operation of general law.**

All laws of a general nature shall have a uniform operation.

**WYO. CONST. art. 3 § 27 Special and local laws prohibited.**

The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: For * * * granting to any corporation, association or individual * * * any special or exclusive privilege, immunity or franchise whatsoever * * *. In all other cases where a general law can be made applicable no special law shall be enacted.

Equal protection is a feature of Article 1, Section 34 of the Constitution of the State of Wyoming by virtue of the words "uniform operation." *Washakie County Sch. Dist. No. 1; Nehring.* The same effect has been afforded to the prohibition against special and local laws. We have said:

The prohibition against special legislation does not mean that a statute must affect everyone in the same way. It only means that the classification contained in the statute must be reasonable, and that the statute must operate alike upon all persons or property in like or the same circumstances and conditions. *Nation v. Giant Drug Company,* Wyo., 396 P.2d 431, 434; and *State v. Sherman,* 18 Wyo. 169, 105 P. 299, 300.

*Mountain Fuel Supply Co. v. Emerson,* 578 P.2d 1351, 1356 (Wyo.1978).

In a number of instances, this court has rejected special legislation which does not operate uniformly and legislation which infringes upon guarantees of equal protection. *Johnson,* 838 P.2d 158 (finding statute providing for loss of driver's license based on age was unconstitutional special legislation lacking rational differentiation and violating the guarantees of equal protection); *State ex rel. Wyoming Ass'n of Consulting Engineers and Land Surveyors v. Sullivan,* 798 P.2d 826 (Wyo.1990) (finding Professional Review Panel Act violated the equal protection guarantees of the Wyoming Constitution); *Hoem v. State,* 756 P.2d 780 (Wyo.1988) (finding Medical Review Panel Act was unconstitutional because it violated the equal protection clause of the Wyoming Constitution); *Phillips v. ABC Builders, Inc.,* 611 P.2d 821 (Wyo.1980) (finding statute of repose immunizing a class of defendants from certain kinds

of liability unconstitutional because it violated constitutional provisions requiring all laws of general nature to have uniform operation and prohibiting special laws where general laws can be made applicable); *Nation v. Giant Drug Co.*, 396 P.2d 431 (Wyo.1964) (finding ordinance prohibiting businesses which sold personal property from being open for business on Sunday, but excluding certain stores which sold specified items, was unreasonable, arbitrary, capricious, discriminatory, and oppressive); *Bell v. Gray*, 377 P.2d 924 (Wyo.1963) (finding unconstitutional the statute which exempted a class of persons from taking a written insurance agent examination, but required other agents who sold the same types of insurance to sit for the exam); *Bulova Watch Co. v. Zale Jewelry Co. of Cheyenne*, 371 P.2d 409 (Wyo.1962) (finding Wyoming Fair Trade Act unconstitutional as being beyond the police power of the state); *Pirie v. Kamps*, 68 Wyo. 83, 229 P.2d 927 (1951) (finding statute requiring publication of legal notices in newspapers having a specified minimum page size was a special law in contravention of the Constitution). *See May v. City of Laramie*, 58 Wyo. 240, 131 P.2d 300 (1942) (finding statutory provision attempting to create a class within a class violated the constitutional provision that the legislature shall provide by general laws for the organization and classification of municipal corporations).

■ Licensure acts such as the MHPPA "are passed for the express purpose of affording the public protection * * *." *Mapes v. Foster*, 38 Wyo. 244, 266 P. 109, 116 (1928). The legislature can, in the exercise of the police power, regulate and require licensure of professionals as it sees fit but any law in furtherance of the police power "must be reasonable and not arbitrary." *State v. Langley*, 53 Wyo. 332, 84 P.2d 767, 771 (1938).

■ The standard of equal protection found in the Wyoming Constitution does not require that all people be treated with exact equality in taxing and licensing. We have said in this regard, in *Nehring*, 582 P.2d at 77:

When there is no prohibition against a reasonable classification of persons and

things for the purpose of legislation, the classification must be reasonable in its discrimination in the light of the objects sought to be accomplished and must not be arbitrary * * *.

■ We have invoked two levels of scrutiny in analyzing classifications in the context of equal protection. In *Kautza v. City of Cody*, 812 P.2d 143, 147 (Wyo.1991), we said:

When a "suspect class" or a "fundamental right" is involved in the classification, we apply a strict scrutiny test which requires a showing that the classification is necessary to achieve a compelling state interest. *Washakie Co. School District No. 1 v. Herschler*, 606 P.2d 310, 333 (Wyo.1980), *cert. denied* 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980); *Clements [v. Fashing]*, 457 U.S. [957] at 963, 102 S.Ct. [2836] at 2843 [73 L.Ed.2d 508 (1982) ].

The other level of scrutiny incorporates a rational relationship test and is appropriate when an ordinary interest is involved. *Hays v. State ex rel. Wyoming Workers' Compensation Div.*, 768 P.2d 11 (Wyo.1989). There is no contention here any of the plaintiffs is a member of a suspect class nor is there any argument a fundamental right has been abridged. The rational relationship test is the appropriate one to invoke.

■ Under this less stringent level of scrutiny, the burden of persuasion is assigned to the challengers to demonstrate application of the MHPPA is unconstitutional. For example, the plaintiffs are charged with showing the invalidity of the provision which forbids unlicensed counselors employed by private, for-profit institutions from having direct patient contact even if that contact occurs under the direct supervision of a licensed counselor, while at the same time exempting public and educational unlicensed counselors from the prohibition. They must demonstrate the classification is unconstitutional beyond a reasonable doubt.

■ In *Johnson*, 838 P.2d at 166–67, we invoked a test new to Wyoming for analyzing state constitution equal protection claims. The four aspects of the test inquire as to (1) what class is harmed by the legislation and has that group been subjected to a tradition

of disfavor by our laws; (2) what is the public purpose to be served by the law; (3) what is the characteristic of the disadvantaged class that justifies disparate treatment; and (4) how are the characteristics used to distinguish people for disparate treatment relevant to the purpose the challenged law purportedly intends to serve. The *Johnson* test is applicable to the consideration of the issues in this case.

■ The plaintiffs do not contend the State is without power to license and regulate members of mental health professions. They argue the MHPPA creates an unreasonable classification and the licensing provisions manifest an arbitrary and unreasonable exercise of the police power, without any compelling state interest or rational basis. These parties point to *Bell* as precedent for holding a law unconstitutional as special legislation, lacking uniformity of operation and violating the tenets of equal protection. In *Bell,* this court held, applying the reasonable basis analysis, the statute was unreasonable because all persons in the exempted class, persons who sold insurance in connection with motor vehicle sales transactions, were permitted to sell the same types and varieties of insurance as those agents included in the regulated class. The plaintiffs here contend the exemption of public unlicensed counselors has exactly the same effect. They raise as the critical question among those certified whether the classification created by the exemption provision of the MHPPA has a reasonable basis. They assert it does not and, instead, constitutes arbitrary and invidious discrimination.

■ The first question we pose is whether the legislation harms the class of unlicensed counselors who are employed by private, for-profit institutions, and whether those persons have been subjected to a tradition of disfavor. The plaintiffs point out the MHPPA requires counselors employed by private, for-profit institutions to be licensed. They argue the MHPPA prohibits unlicensed counselors working in private, for-profit institutions from having any patient contact even if they are supervised by a licensed counselor. The unlicensed counselors claim they are harmed because effectively they have been

prohibited from acquiring the requisite hours to qualify to sit for the licensure examination and, ultimately, they are prohibited from becoming licensed as they are required to do by the MHPPA. We perceive disadvantage that leads to harm. In order for unlicensed counselors, employed by private, for-profit institutions to become licensed under the law, they will have to leave employment in the private sector, procure a job in an exempt public or educational institution, and be supervised by a licensed counselor for the requisite number of hours. Nothing in the record, other than conjecture, demonstrates the licensed counselors supervising the exempted class are more competent, more ethical, and more qualified to supervise unlicensed counselors. There is a clear disparity of treatment of unlicensed counselors. It may not even be possible for all those seeking licensure to obtain employment in public or educational institutions.

■ We hold the MHPPA subjects the class to harm, but this category of unlicensed counselors has not been subjected to a tradition of disfavor by our laws. Under the 1987 statute preceding the MHPPA of 1993, licensing was a voluntary act, and private and public unlicensed counselors were treated exactly alike. Since this class has not been subjected to a tradition of disfavor in our law, it seems unlikely that the classification is a product of stereotypical thinking, a danger warned against in *Johnson,* 838 P.2d at 166.

■ The next concern under the test is the purpose of a mandatory licensing requirement of private practice counselors while exempting public practice counselors. As is usually true in Wyoming, there is no legislative history. The drafter of the legislation, a member of the Wyoming Mental Health Professions Licensing Board (Board), stated the changes in the law will serve the purpose of protecting the public health, safety, and welfare. The drafter advanced four reasons for providing for exemption of public unlicensed counselors, but requiring licensure of those in the private sector.

The first reason was that, since the Board first came into existence, approximately half of the issued licenses have been held by

private counselors and the other half by public counselors. Yet, the drafter testified the Board had received and dealt with nineteen verified complaints against private licensees and only one against a public licensee. He said, "[f]or that reason, it is evident that there is a greater need for regulation in the private sector where profit is a goal. Without licensure requirements, there would be no way to attempt to insure the safety of the public." His second reason, which is related, asserts public practice is under a *de facto* regulatory system because of the tiers of management. He claims this insures services are provided in the most effectual manner and in the best interest of the public. The rational basis asserted for the different treatment is that profit is not a goal.

The third reason relates to the phasing-in of the mandatory licensing of practitioners in public practice. The contention by the Board is that, because of the shortage of licensed counselors, rural areas of Wyoming could be left without any mental health care services, which would not be in the best interest of the public. The fourth reason advanced is that the act is "piecemeal" reform of the mental health profession in Wyoming. The Board took the position that it started with regulation in the sector which appeared to be most in need of it.

■■■ The legislature has a legitimate and substantial interest in prescribing reasonable qualifications for occupations requiring special knowledge or skill and affecting the public health, safety, and welfare. That interest of the State can be found in the purposes of providing safety to the public, who are potentially vulnerable to abuse, retaining the availability of services in rural areas, and providing for phase-in legislation with respect to licensure. The second concern under the *Johnson* test is satisfied.

■■■ The third prong of the test demands inquiry into what characteristics of the private, for-profit counselors justify the disparate treatment. The plaintiffs contend no real difference exists between unlicensed counselors who are exempted by the statute and unlicensed counselors who are not exempted by the statute. They argue counselors with the same training, experience, and

education are treated differently by the statute based solely upon the public or private character of their employers. The response of the Board is that a profit motive causes a greater need for regulation of licensed private, for-profit counselors. In the absence of the licensure requirements, the Board contends also there is no other means of insuring the safety of the public. The record does not support the contentions of the Board with respect to either response. There is no demonstration on the record no other means exists for insuring safety for the public in the absence of mandatory license requirement for private, for-profit counselors, and no demonstration the profit motive demands greater regulation. The process for insuring safety for the public is currently provided under *de facto* regulation and the current structure of supervision in both classes of unlicensed counselors. In either instance, licensed counselors supervise unlicensed counselors. Furthermore, the statutory and administrative process for accepting and resolving complaints is available.

The record is also deficient with respect to the concern about the complaints against private, for-profit licensed counselors. The nature of those complaints, the merits of those complaints, the resolution of those complaints, and the number of private counselors against whom complaints were lodged cannot be established by this record. Conceptually, they could address anything from billing practices to personality conflicts. There could be multiple complaints against a single counselor. In presenting this contention, the Board does not explain its conclusion that the fact nineteen complaints were filed was related to the desire of the licensed counselors for profit. Nothing in this record demonstrates the licensure requirements would change the complaints received by the Board. Other means, such as disciplinary actions or continuing education, including training in ethical conduct, may address these problems more directly.

Were we to accept the Board's contention that licensure is useful in assuring public health, safety, and welfare, the exemption of a large number of unlicensed counselors from the requirement does not seem useful in

reaching the Board's objective. Permitting untrained volunteers to provide counseling services so long as they work for non-profit or charitable organizations, while at the same time forbidding counselors who are educated, have experience, and are in the process of receiving training to provide counseling to patients, does not appear to promote public safety. The potential is exactly the opposite.

With respect to policy options, we said in *Hoem*, 756 P.2d at 783:

> While it is true that "[t]he social wisdom of the legislature's policy choices is, of course, irrelevant to the question of constitutionality of the Act," it also is true that "[c]omplete disregard for other potential policy options is, however, of at least tangential relevance when considering whether a legislative * * * goal is a legitimate one." *Waggoner v. Gibson*, 647 F.Supp. 1102, 1104 n. 3 (N.D.Tex.1986).

The failure to consider other policy options is relevant to the legislative goal in this case.

The trial court concluded the provisions of the MHPPA create a no-win situation for unlicensed counselors in the private sector. Licensure is mandatory for them, but they are foreclosed from the licensing process. On the other hand, unlicensed counselors for whom licensing is not required have access to the licensure process. A more clear denial of equal protection would be difficult to find.

■ The last question of the *Johnson* test addresses how the characteristics used to distinguish those who are conducting private, for-profit institutions are relevant to the purpose of assuring public health, safety, and welfare.

> [A]ny claim that the restriction of the law bears a reasonable relation to a public interest must rest not on conjecture but must be supported by something of substance, *Nation v. Giant Drug Company*, Wyo.1964, 396 P.2d 431. See also, *Heather v. Delta Drilling Co.*, Wyo.1975, 533 P.2d 1211, reh. den.

*Nehring*, 582 P.2d at 77.

In this instance, the claim of the Board that the restriction bears a reasonable relation to the public interest is based on conjecture.

The Board argues the tiers of management in public entities seek to insure the most effective services are provided in the best interest of the public. The record reveals the plaintiffs are directly supervised by other licensed counselors and work in conjunction with physicians, psychiatrists, Ph.D. psychologists, and licensed social workers. There is no evidence to demonstrate any relation to the best interest of the public in forbidding unlicensed counselors from being supervised by licensed counselors in private institutions or to justify a conclusion that the supervision is inadequate.

The application of the test articulated in *Johnson* leads to the conclusion that the rights of the plaintiffs to equal protection have been transgressed. None of the evidence demonstrates that supervision by public, licensed counselors results in the qualification of counselors who are more competent or more ethical and, thus, more likely to protect the health, safety, and welfare of the public. The differentiation of the public employer or the charitable employer from the private, for-profit employer cannot be justified as a proper classification and, thus, is not a legitimate exercise in police power. We hold this classification is not founded on a reasonable basis, is arbitrary, and constitutes unwarranted discrimination. It is a violation of equal protection and must be set aside.

■ The plaintiffs also claim their right to due process has been infringed. They contend they have been deprived of a property right to employment which was granted to them by the 1987 "Professional Counselors, Marriage and Family Therapists, Social Workers and Chemical Dependency Specialists Act." They invoke Article 1, Section 6, of the Constitution of the State of Wyoming, which provides:

**Due process of law.**

No person shall be deprived of life, liberty or property without due process of law.

In considering this claim, the trial court also relied upon Article 1, Section 7, of the Constitution of the State of Wyoming, which provides:

**No absolute, arbitrary power.**

Absolute, arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority.

■ These provisions do protect the rights of citizens to due process as well as other personal liberties, but the facts in this case do not justify invoking them. In their brief, the plaintiffs assert, and in its conclusions of law the trial court found, those property rights to employment were violated by the passage of the MHPPA. The record does not contain a copy of any affected employment contract, and no evidence was presented that any employment was for a specified duration. In the absence of evidence, we treat the employment of the plaintiffs as at-will employment.

In *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211, 217 (Wyo.1994), we said:

Wyoming continues to accept the common-law employment at will rule which states that either party may terminate a contract of employment, which is for an indefinite duration, at any time, for any reason or for no reason at all. *Lankford v. True Ranches, Inc.*, 822 P.2d 868, 872 (Wyo.1991); *Chasson v. Community Action of Laramie County, Inc.*, 768 P.2d 572, 575 n. 1 (Wyo.1989); *Rompf v. John Q. Hammons Hotels, Inc.*, 685 P.2d 25, 27 (Wyo.1984).

*See also Drake v. Cheyenne Newspapers, Inc.*, 891 P.2d 80, 81 (Wyo.1995).

So far as we can tell, Crest View Hospital and Casper Psychological, or any of the employees could have terminated this employment at any time. Neither the employer nor the employee would have been able to pursue an action for breach of the employment contract. It follows that the right of the individuals to employment could not be violated when either party could terminate the employment contract at will. No interference with a property right is present in this instance which would justify reliance upon the due process clause. In addition, nothing suggests the legislative process was not correctly followed, and nothing in the record discloses any inhibition of the rights of the parties to be involved in the legislative process.

■ The trial court also certified a question with respect to the violation of a contract *ex post facto*. That concern invokes Article 1, Section 35, of the Constitution of the State of Wyoming, which provides:

**Ex post facto laws; impairing obligation of contracts.**

No ex post facto law, nor any law impairing the obligation of contracts, shall ever be made.

With respect to an *ex post facto* law, Casper Psychological states it had a contract with Crest View to provide counseling services prior to the effective date of the MHPPA. Casper Psychological contends it was forced to discontinue the provision of services by unlicensed counselors to Crest View which caused substantial economic injury as well as injury to its reputation. It argues the MHPPA clearly impaired the contract between it and Crest View.

■ The trial court accepted Casper Psychological's argument and found the MHPPA impaired the rights and obligations of the contract. Again, we are frustrated by the state of the record. There is no copy of the contract, and all the evidence relating to it is hearsay. We refuse to consider the *ex post facto* claim where the record is deficient in this regard, and our decision would have to be based upon hearsay testimony. Constitutional questions require clarity in the record.

The parties separately enumerate issues of "fencing" legislation, fundamental property rights, liberties and privileges, and the creation of an unconstitutional classification, but we believe these claims are all subsumed by the major claim of equal protection. They require no further discussion in light of our conclusion that the statute does violate the equal protection provisions of the Constitution of the State of Wyoming. We do not perceive the MHPPA as "vague," but conclude it impermissibly creates a classification and, for that reason, it exceeds the proper exercise of the police power. We agree with the finding of the trial court that patients with serious emotional afflictions may be deprived of needed and perhaps lifesaving ser-

vices if the MHPPA is enforced as the legislature apparently intended.

The Board presents two final contentions. It relies upon *Colorado Soc'y of Community and Institutional Psychologists, Inc. v. Lamm,* 741 P.2d 707 (Colo.1987), as controlling. In that case, the court found the amendments at issue did provide classifications which bore a rational relationship to the legitimate governmental interest of regulating the practice of psychology to protect public health, welfare, and safety. The Colorado court also found no constitutionally protected property right existed to practice psychology under the repealed exemptions to the licensing act. We distinguish that case on two bases. First, the amendments did result in requiring unlicensed, previously-exempted psychologists to become licensed, but they did not foreclose those psychologists from licensure under their existing employment situation. All unlicensed psychologists were required to have the same qualifications through the same process. Second, in that case, the equal protection analysis was accomplished under the Fourteenth Amendment to the Constitution of the United States, which does not offer the same robust protection as Wyoming's equal protection provisions. *Lamm* is different on its facts and the law invoked.

The Board also argues that Allhusen and Korb were not treated differently because regulations were promulgated and adopted in October 1993 to allow them to obtain supervised clinical experience by private licensed counselors. While WYO.STAT. § 33–38–105 does require the Board to "adopt rules not inconsistent with this act or the laws of this state that are reasonable and necessary to administer this act," we conclude the regulations are not consistent with the act and cannot avoid the constitutional shortfall.

The effect of our declaration of unconstitutionality should be the same as that declared in *Copp v. Redmond,* 858 P.2d 1125, 1127 (Wyo.1993) (citations omitted), where we said:

> Generally, when an amendment to an original act is declared unconstitutional, the unconstitutional amendment has no effect, and the law as it existed before the amendment is controlling.

It, therefore, is our intention, in declaring WYO.STAT. §§ 33–38–110, –106, –103 (Supp. 1994) unconstitutional and of no effect, to reinstate the provisions as they existed prior to the 1993 amendments.

In summary, we hold the mandatory licensure provisions under WYO.STAT. § 33–38–110 (Supp.1994), the prerequisites to licensure found in WYO.STAT. § 33–38–106 (Supp.1994), and the licensure exemptions set forth in WYO.STAT. § 33–38–103 (Supp.1994) violate guarantees of equal protection under WYO. CONST. art. 1, §§ 2 and 34 and WYO. CONST. art. 3, § 27. There is no rational relationship between the purpose for these amendments and affording disparate treatment of unlicensed counselors employed by private, for-profit institutions. These provisions must be stricken as contrary to guarantees of equal protection, the guarantee of uniform operation of laws, and as special legislation. The unconstitutional provisions are of no effect, and the law in the form it existed prior to the amendments is controlling.