The **BOARD OF COUNTY COMMIS-SIONERS, Sublette County, Wyoming, Appellant (Plaintiff),**

v.

Jim **GERINGER, Governor of the State of Wyoming; and Stan Smith, Wyoming State Treasurer, Appellees (Defendants).**

No. 96–1.

Supreme Court of Wyoming.

July 3, 1997

Van Graham, of Mason & Graham, P.C.; and Ralph E. Wood (argued), of Sievers & Wood, Pinedale, for Appellant.

William U. Hill, Attorney General; Michael L. Hubbard, Deputy Attorney General; Ron Arnold, Senior Assistant Attorney General (argued), for Appellees.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN,* and LEHMAN JJ.

THOMAS, Justice.

The sole issue presented by this appeal is the constitutionality, under our state constitution, of Wyoming's statutory provision providing for the establishment and funding of a county court in counties with a population of less than 30,000.[1] The issue arises under the equal protection and uniform operation of the laws requirements found in the Constitution of the State of Wyoming.[2] Sublette County, with a population of less than 30,000, was denied full funding to establish a county court, while the state legislature has approved full funding for a county court in other counties having a population of less than 30,000. We hold that the statutory provision does not facially violate the state constitution as special legislation, as there exist rational reasons why the legislature could deny funding of county courts in counties having a population of less than 30,000. However, as applied to this case, the statutory provision violates the constitutional mandate for equal protection of the laws because there is disparate treatment of counties having populations of less than 30,000. We reverse the decision of the district court.

In the Brief of Appellant, the Board of County Commissioners, Sublette County, Wyoming states the issue as:

I. Whether *Wyoming Statute* § 5–5–103 is special legislation and violates *Wyoming Constitution* Article 3, Section 27?

---

* Chief Justice at the time of oral argument.

1. Wyo. Stat. § 5–5–103 (1992).

2. Wyo. Const. art. 3, § 27 & Wyo. Const. art. 1, § 34.

The State of Wyoming [3] restates the issue in the Brief of Appellees as:

I. Whether Wyoming Statute § 5–5–103 facially violates Wyoming Constitution Article 3, Section 27?

The parties filed a Stipulation Concerning Factual Issues in which they advised the court that the material facts in the case are not in dispute. Each of the parties had filed a motion for summary judgment, and for purposes of this appeal, the only facts set forth in the record are those alleged in the Complaint for Declaratory Judgment. From the Complaint we discern that Sublette County, with a population of less than 30,000, had established a county court by a resolution of the board of county commissioners. The legislature did not provide funding for the county court in Sublette County although application for such funding had been made.

The statute applicable to counties with a population of less than 30,000 is Wyo. Stat. § 5–5–103 (1992) (emphasis added), which provides:

(a) In counties in this state which have a population of less than thirty thousand (30,000), according to the latest official federal census, the board of county commissioners may establish a county court in their county by the adoption of a resolution establishing the same. * * *

(b) The judicial salaries, salaries of the clerical staff, supplies, operating costs, jury and witness expenses and other expenses of the county court **may be paid by the state.**

The statutory provision for counties with a population of more than 30,000 requires the state to fund the expenses of the county court. Wyo. Stat. § 5–5–102 (1992).

In its Complaint, Sublette County alleged that the decision to deny funding to Sublette County for its county court violated the provisions of Article 3, § 27 of the Constitution of the State of Wyoming on the ground that it was special legislation on its face. The Complaint also alleged that the legislature has funded county courts in six other counties with a population of less than 30,000, but refused to fund county courts in other counties with a population of less than 30,000. The Complaint alleges that the statute permits the legislature to afford a special benefit to some counties not provided to other counties that are similarly situated.

The district court granted the Motion For Summary Judgment filed on behalf of the State and denied the Motion For Summary Judgment filed on behalf of Sublette County. The effect of the Order Granting Defendants' Motion For Summary Judgment And Denying Plaintiff's Motion For Summary Judgment was to hold that Wyo. Stat. § 5–5–103 is constitutional. Sublette County has appealed from that order.

█ The parties, by virtue of their stipulation, agree that there are no genuine issues of material fact in this case. It was appropriate for the district court to dispose of the case as one involving only a question of law. *State v. Moncrief,* 720 P.2d 470, 472 n. 1 (Wyo.1986). *See Coyne v. State ex rel. Thomas,* 595 P.2d 970, 971 (Wyo.1979); *Jahn v. Burns,* 593 P.2d 828, 829 (Wyo.1979); *Fugate v. Mayor and City Council of Town of Buffalo,* 348 P.2d 76, 81 (Wyo.1959). In such an instance we review the grant of a summary judgment without according any deference to the decision of the district court on questions of law. *Davis v. Black Hills Trucking, Inc.,* 929 P.2d 532, 534 (Wyo.1996); *Duncan v. Town of Jackson,* 903 P.2d 548, 551 (Wyo.1995). The parties have essentially argued the case under the concept of special legislation, and that will be the focus of our analysis.

█ Initially, however, we consider the jurisdiction of the court. Neither party has raised this issue, but we do have an independent responsibility to test jurisdiction. *Amrein v. Wyoming Livestock Bd.,* 851 P.2d 769, 771 (Wyo.1993); *Kurpjuweit v. Northwestern Development Co., Inc.,* 708 P.2d 39, 44 (Wyo. 1985); *Gardner v. Walker,* 373 P.2d 598, 600 (Wyo.1962). If the lower court does not have jurisdiction, we also lack jurisdiction. *Mat-*

---

**3.** The named parties are the Governor and the State Treasurer, but it is clear they are sued in their official capacities. Consequently, the State of Wyoming will be treated as the party in this case.

*ter of Estate of Fulmer,* 761 P.2d 658, 660 (Wyo.1988); *Snell v. Ruppert,* 541 P.2d 1042, 1048 (Wyo.1975); *Pritchard v. State, Division of Vocational Rehabilitation, Dept. of Health & Social Services,* 540 P.2d 523, 527 (Wyo.1975); *Ginn v. Parrish,* 362 P.2d 824, 828 (Wyo.1961).

In two cases, we have held that, absent a specific constitutional or statutory provision authorizing such an action, a county cannot sue the state. *Carbon County School Dist. No. 2 v. Wyoming State Hosp.,* 680 P.2d 773 (Wyo.1984); *State v. Board of County Com'rs of Johnson County,* 642 P.2d 456, 458 (Wyo. 1982). The thrust of those cases is that a public entity, authorized by statute and funded from state coffers or other public revenues, that performs functions for the public at large is simply another arm of the state. As such it does not possess the essential adversarial interest or claim against the state contemplated by a dispute arising between two or more parties, and in effect, as a part of the state is endeavoring to sue itself. *Mountain View/Evergreen Imp. and Service Dist. v. Brooks Water and Sewer Dist.,* 896 P.2d 1355 (Wyo.1995).

These principles have not been applied, however, in actions between agencies of the state and the state itself, or between the state and officers of the state in suits to have statutes construed and to determine the correlative rights of the parties. *Board of County Com'rs of County of Laramie v. Laramie County School Dist. Number One,* 884 P.2d 946, 950 (Wyo.1994); *Carbon County School Dist. No. 2,* 680 P.2d at 775; *Washakie County School Dist. No. One v. Herschler,* 606 P.2d 310, 317, *cert. denied,* 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980) (standing is not a rigid or dogmatic rule but is one that must be applied with a view to realities as well as practicalities of the situation). The limitations are not invoked in proceedings between segments of the state when declaratory judgment provisions are available to determine their respective rights and liabilities as set forth in constitutional provisions and statutory enactments. *Simons v. Laramie County School Dist. No. One,* 741 P.2d 1116 (Wyo.1987). We hold that, since Sublette County asserts a state statute is in violation of the constitutional mandate relating to special legislation, it must be afforded standing to bring this action against the state.

Sublette County contends that WYO. STAT. § 5–5–103 is special legislation facially violating WYO. CONST. art. 3, § 27 because the statute discriminates against the class of counties with a population of less than 30,000. The county argues that WYO. STAT. § 5–5–103 affords discretion to the legislature with respect to whether it should fund the county court in counties having a population of less than 30,000, while the legislature is mandated to fund the county court in those counties having a population of more than 30,000 in accordance with WYO. STAT. § 5–5–102. Because the essence of Sublette County's claim is unlawful classification, our cases addressing classifications in the context of equal protection are analogous and pertinent. Indeed we have said that the prohibition against special legislation is a guarantee of equal protection. *Campbell County School Dist. v. State,* 907 P.2d 1238, 1273 (Wyo. 1995).

In treating the question of unconstitutionality of a statute, we impose a severe burden upon Sublette County. *Hansen v. State,* 904 P.2d 811, 817 (Wyo.1995), and cases there cited. Sublette County must establish the statute is unconstitutional beyond a reasonable doubt, and any fact that can be rationally conceived to sustain the classification is to be assumed. *Allhusen v. State By and Through Wyoming Mental Health Professions Licensing Bd.,* 898 P.2d 878, 885 (Wyo.1995); *Paravecchio v. Memorial Hosp. of Laramie County,* 742 P.2d 1276, 1282 (Wyo.1987); *Baskin v. State ex rel. Worker's Compensation Div.,* 722 P.2d 151, 155–56 (Wyo.1986), and cases there cited. Article 3, § 27 of the Constitution of the State of Wyoming does not forbid legislative classification, but the legislature is required to treat with equality citizens or entities that are similarly situated. *Snyder v. State,* 912 P.2d 1127, 1131 (Wyo.1996); *Hansen v. State,* 904 P.2d at 817; *Allhusen,* 898 P.2d at 884.

Claims of unconstitutional classification are treated under two levels of scrutiny. If the class is suspect or a fundamental

right is involved, a strict scrutiny standard is applied that requires a demonstration that the classification is necessary to achieve a compelling state interest. *In re Honeycutt,* 908 P.2d 976, 979 (Wyo.1995); *Allhusen,* 898 P.2d at 885; *Washakie County School Dist. No. One,* 606 P.2d at 333. If a suspect class or a fundamental right is not involved, the applicable standard is the rational relationship test to determine if the classification has a rational relationship to a legitimate state interest. Neither party to this action asserts that a fundamental right or a suspect class is present. Consequently, the classification will be analyzed under the rational relationship test.

We invoke the four part test articulated in *Allhusen* in analyzing the constitutionality of a classification under the rational relationship test. *Snyder,* 912 P.2d at 1132. The court looks to these factors:

> (1) what class is harmed by the legislation and has that group been subjected to a tradition of disfavor by our laws; (2) what is the public purpose to be served by the law; (3) what is the characteristic of the disadvantaged class that justifies disparate treatment; and (4) how are the characteristics used to distinguish people for disparate treatment relevant to the purpose the challenged law purportedly intends to serve.

*Allhusen,* 898 P.2d at 885–886. We hold, in light of the four part test, that WYO. STAT. § 5–5–103 does not violate Article 3, § 27 of the Wyoming Constitution on its face.

If we assume counties with a population of less than 30,000 are harmed, we then consider whether they have been subjected to a tradition of disfavor in the law. Counties with a population of less than 30,000 have not been subjected to a tradition of disfavor in our law. Nothing in the record so suggests. In the absence of a demonstration of a tradition of disfavor we could not conclude that the legislature has classified those counties as a product of a pattern of disparate treatment. We then consider the purpose of the legislative conclusion to provide state funding for county courts in those counties with a population of more than 30,000, but maintaining its discretion as to whether it should fund those courts in counties with a population of less than 30,000. By WYO. STAT. § 5–5–102 counties with a population of more than 30,000 are required to establish a county court. Conversely, if the population of the county is less than 30,000, the board of county commissioners is afforded discretion with respect to the establishment of a county court. WYO. STAT. § 5–5–103(a). In such instances, the legislature reserved the determination of whether it would or would not fund a county court in a county less than 30,000 population. WYO. STAT. § 5–5–103(b).

Several factors may reasonably be conceived to justify this classification. The legislature might have considered the fact that more sparsely populated counties would not need the services of a county court because the volume of court business would not justify a county court. Rationally, the legislature could have concluded that the state coffers were not adequate to fund a county court in all 23 counties of the state. It is possible that the legislature conceived that counties that could not justify the full-time services of a county court judge would voluntarily join with other counties to create a county court district and that the discretion to not fund would induce them to do so.

The public purpose factor is closely related to the third factor involved in the *Allhusen* test, that is the characteristics of counties having populations of less than 30,000 that justify disparate treatment. Some of the same facts that support the public purpose are involved with respect to the justification for disparate treatment. A lower volume of court business would perhaps justify the classification. The much larger number of counties leading to a significantly greater expenditure from the public coffers is readily apparent. The adequacy of judicial service provided by a justice of the peace court is more probable in a smaller county. It may be appropriate to encourage such counties to share judicial services on a district premise.

The fourth factor we must consider is how those characteristics that might distinguish counties with a population of less than 30,000 are relevant to assure the legislative purposes. Again the relevance is demonstrated by the characteristics discussed above. The

lower population would lend credence to a conclusion that the volume of court business would not justify a county court. The relatively small number of counties with more than 30,000 people would not impose the same burden upon the state coffers that a county court in smaller counties would. Again the legislature may have been concerned about structuring a potential for collaboration among counties.

We conclude that, applying the *Allhusen* test, the classification of counties with less than 30,000 population is rationally related to the purposes to be achieved and is not facially unconstitutional. Sublette County, however, in its Complaint and in its brief to this Court, argues that the statute is unconstitutional as it has been applied because sub-classifications exist within the counties of less than 30,000 population and there is no rational basis to support the sub-classifications. Like equal protection, the contemplation of special legislation "mandates that all persons similarly situated should be treated alike, both in the privileges conferred and in the liabilities imposed." *Allhusen,* 898 P.2d at 884 (quoting *Small v. State,* 689 P.2d 420, 425 (Wyo.1984)); *Snyder,* 912 P.2d at 1131 (a statute must operate alike upon all persons in the same or similar circumstances).

While this action was instituted by Sublette County, we would be remiss if we did not acknowledge that the county entity represents the citizens who reside there. We find it implicit, if not explicit, in our decisions relating to the expenditure of public funds that citizens in one county or area are entitled to have the law function in such a way that public funds are expended equitably. *Simons v. Laramie County School Dist. No. 1,* 741 P.2d at 1121; *Washakie County School Dist. No. One,* 606 P.2d at 335. It is patent from the dynamics of this case that Sublette County is spending money for the maintenance of its county court that other counties with populations of less than 30,000 do not have to spend for that purpose. The public funds are not expended equitably.

Under the statutory structure as it exists, the legislature has funded county courts in at least six different counties all having a population of less than 30,000. The legislature denied funding for the county court in Sublette County. We apply the same four factor test of *Allhusen* to determine whether the statute is unconstitutional as applied.

We also know that "[a]ll laws of a general nature shall have a uniform operation." Wyo. Const. art. 1, § 34; *Washakie County School District No. 1. v. Herschler,* 606 P.2d 310 (Wyo.1980), *cert. denied sub nom Hot Springs County School District No. 1 v. Washakie County School District No. 1,* 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980). *See Nehring v. Russell,* 582 P.2d 67 (Wyo.1978). This rule demands that these statutes be applied uniformly throughout the state, * * *.

*Longfellow v. State,* 803 P.2d 1383, 1389 (Wyo.1991). There is nothing in the record that would serve to justify the approval of funding for county courts in six other counties with populations of less than 30,000 while denying funding for a county court in Sublette County. As the statute is applied, WYO. STAT. § 5–5–103 does not operate alike upon all counties in the same or similar circumstances. The differentiation between Sublette County and other counties with a population of less than 30,000 is not justified by this record, and since the classification is not justified, the statute as it has been applied must be perceived as special legislation in violation of Article 3, § 27 of the Constitution of the State of Wyoming. It must be declared unconstitutional.

The decision of the district court is reversed.