## LINCOLN COUNTY SCHOOL DISTRICT NO. ONE, Appellant (Intervening Plaintiff),

v.

The STATE of Wyoming; Judy Catchpole, Superintendent of Public Instruction; Max Maxfield, State Auditor; Gary Crum, Mark Higdon, Juliann Wilkins-Hughes, Jon Kirkbride, Russ Kirlin, Jay Lyon, Donn J. McCall, Robert McKim, Kate Missett, Judy Richards, and Brent Young, Members of the Wyoming State Board of Education, Appellees (Defendants).

No. 98–344.

Supreme Court of Wyoming.

July 21, 1999.

Representing Appellant: Steven F. Freudenthal of Herschler, Freudenthal, Salzburg, Bonds & Zerga, P.C., Cheyenne, Wyoming; and Joseph B. Bluemel, Kemmerer, Wyoming.

Representing Appellees: Raymond B. Hunkins, Special Assistant Attorney General of Jones, Jones, Vines & Hunkins, Wheatland, Wyoming; and John B. "Jack" Speight, Robert T. McCue, and Dominique D.Y. Cone, Special Assistant Attorneys General of Hathaway, Speight & Kunz, LLC, Cheyenne, Wyoming.

Before LEHMAN, C.J.; THOMAS, MACY and GOLDEN, JJ.; and DAN R. SPANGLER, D.J. (RET.)

SPANGLER, District Judge (Retired).

The appellant, being granted leave to intervene in the case of *Campbell County School District v. State*, Civil No. 129–59, challenged the constitutionality of that portion of the school funding reform legislation which provides for transitional funding from the old to the new funding process. After a bench trial, the district court upheld the legislation.

We affirm.

## ISSUES

The appellant presents this issue:

Whether the funding limit of $250,000.00 in Hold Harmless funding, applicable only to recapture/grey area school districts, is unconstitutional and void under the equal protection provisions of WYO CONST. art. III, § 27 and art. I, § 34, when no such limit applies to all other school districts. This funding limit is found at Section 306(a)(v), as added to 1997 Special Session Laws, Section 306 by Section 601 of 1998 Special Legislative Session, Senate File 54, Enrolled Act No. 2.

The appellees state the issue as follows:

A. Is the traditional distinction between wealthy and other school districts constitutional in laws which ease the transition to cost-based school funding?

## LEGAL AND FACTUAL HISTORY

In the case of *Washakie County School District Number One v. Herschler*, 606 P.2d 310 (Wyo.), *cert. denied*, 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980), this Court held that school funding disparities based upon the wealth of school districts were unconstitutional as a denial of equal protection. In response, the Wyoming Constitution was amended to allow the recapture of local revenues from some school districts for distribution to others. Wyo. Const. art. 15, § 17. This created what has been referred to as "recapture districts," "gray area districts," or "wealthy districts." All districts were guaranteed a minimum level of funding, known as the guaranteed funding entitlement.

The wealthy districts were those which generated more than their guaranteed funding entitlement. They were allowed to keep various percentages of revenues in excess of their entitlement. The recapture districts were required to return any excess above the bonus amount to the state. The gray area districts were those which raised more money than their guaranteed funding entitlement but did not exceed the bonus amount. The appellant was a gray area or recapture district each school year from the commencement of this arrangement in the 1983–1984 school year through the 1996–1997 school year, with the exception of two years.

In the case of *Campbell County School District v. State*, 907 P.2d 1238 (Wyo.1995), this Court reiterated its holding in the *Washakie County School District Number One* case and directed that school funding must be based upon costs, not upon the wealth of individual districts. The decision held that the bonus to wealthy districts was unconstitutional and directed the legislature to fund the districts based upon what it costs to provide a proper education. *Campbell County School District*, 907 P.2d at 1279–80.

During the 1997 Special Session, the legislature modified the public school finance reform legislation, providing that all districts are entitled to only the amount which it costs to educate their students. 1997 Wyo. Spec. Sess. Laws ch. 3, §§ 101–701. Thus, wealthy districts were subject to recapture of their local revenue in excess of their cost-based formula amount. Because this would have resulted in some districts receiving less funding than under the previous law, the legislature enacted transitional measures, including a "hold harmless" provision. The pertinent portions of the hold harmless provision are as follows:

**Section 306. 1998–1999 and following.**

(a) Notwithstanding W.S. 21–13–309(p) as created in this act and using computations of district general fund revenues by the state department based upon reports from districts required by the department:

(i) For school year 1998–1999, revenues available to any school district shall not be less than ninety-eight percent (98%) of the total general fund revenues available to that district during the 1997–1998 school year, but subject to the limitation in paragraph (vi) of this subsection.

(ii) For school year 1999–2000, revenues available to any school district shall not be less than ninety-eight percent (98%) of the total general fund revenues available to that district during the 1998–1999 school year, but subject to the limitation in paragraph (vi) of this subsection.

. . . .

(v) The additional funding to be provided to a district under paragraphs (i) and (ii) of this subsection is limited to not more than two hundred fifty thousand dollars ($250,000.00) in each year if the total local resources for the district for the 1997–1998 school year as computed under W.S. 21–13–310, as it was in effect for that school year, was greater than the foundation program amount for that school district for that school year as computed under W.S. 21–13–309(k), as it was in effect for that school year.

1998 Wyo. Sess. Laws ch. 2, § 601. The appellant challenges § 306(a)(v) in this action.

The hold harmless provision applies to districts, such as the appellant, which lost some funding for the 1998–1999 school year as compared to the 1997–1998 school year and which will lose funding for the 1999–2000 school year as compared to the 1998–1999 school year. Even though the cost-based funding for these districts might be less than 98% of their prior year's funding, the provision allows additional funding up to the 98% level. But for the historically wealthy districts, these hold harmless payments are limited to $250,000.

For the 1997–1998 school year only, the legislature also allowed school districts to levy an additional tax of not more than six mills by school board action. Wyo. Stat. Ann. § 21–13–102(a) (Michie Supp.1998) (amended 1999). The appellant increased its levy by the full six mills, generating $1,715,-000. Its revenues were affected as follows:

| Year | Revenue |
|------|---------|
| 1996–1997 | $6,660,000 |
| 1997–1998 | $8,200,000 |
| 1998–1999 | $6,470,000 |

The appellant states that, because of the $250,000 cap on hold harmless payments which applies to recapture/gray area districts, its percentage loss of revenues from 1997–1998 to 1998–1999 was ten times the percentage loss of any other school district affected by the cap. The appellees respond that none of the other wealthy school districts which received hold harmless payments at 98% levied the full six mills for the 1997–1998 school year. If these other districts had levied the full six mills, they also would have been affected by the $250,000 limit on the hold harmless funding.

## DISCUSSION

■ The appellant contends that the $250,000 cap deprives it of equal protection of the laws. Its theory is that the classification impinges upon the fundamental right to a quality education and is subject to the strict scrutiny test, requiring that the state demonstrate a compelling state interest in the disparate treatment. The appellant quotes this passage from the *Campbell County School District* case:

> Because the right to an equal opportunity to a proper public education is constitutionally recognized in Wyoming, any state action interfering with that right must be closely examined before it can be said to pass constitutional muster. Such state action will not be entitled to the usual presumption of validity; rather, the state must establish its interference with that right is forced by some compelling state interest and its interference is the least onerous means of accomplishing that objective.

907 P.2d at 1266–67.

The strict scrutiny standard is not the proper test for the transitional funding legislation. The *Campbell County School District* decision held that there was an unconstitutional interference with the right to a public education when school funding was based not upon the cost to educate students but upon the wealth of individual districts. The transitional funding legislation does not interfere with educational rights. It is part of a process in which all districts will eventually be funded on a cost basis. The revenue allocated to the appellant for the school year in question, 1998–1999, was calculated under the same cost-based formula which was used for all school districts. The appellant is claiming a fundamental right to funding in excess of its costs. That is not a right protected by the *Campbell County School District* case.

■ The appellant claims that the $250,000 cap is also unconstitutional under the less rigorous rational relationship test. It states that the classification does not have a rational relationship to a legitimate state interest under the four-part test established in *Allhusen v. State By and Through Wyoming Mental Health Professions Licensing Board,* 898 P.2d 878, 885–86 (Wyo.1995). In applying the test, we must determine

> (1) what class is harmed by the legislation and has that group been subjected to a tradition of disfavor by our laws; (2) what is the public purpose to be served by the law; (3) what is the characteristic of the disadvantaged class that justifies disparate treatment; and (4) how are the characteristics used to distinguish people for disparate treatment relevant to the purpose the challenged law purportedly intends to serve.

Addressing the first element of the *Allhusen* decision, we are not persuaded that any class has been harmed by the transitional legislation. The class allegedly harmed consists of the traditionally wealthy districts. Instead of being placed directly on a cost-based funding program, the districts were given the opportunity to levy an additional six mills for the 1997–1998 school year. As a result, the appellant enjoyed substantial revenues in excess of costs. In addition, the class of wealthy districts has not been subjected to a tradition of disfavor by our laws. To the contrary, that class has benefited from years of funding in excess of a cost-based formula.

Second, the public purpose to be served by the transitional funding law is to afford some protection to the class of which the appellant is a member. Instead of being placed direct-

ly on cost-based funding, for two years these districts are guaranteed funding at 98% of the previous year, with a $250,000 cap on additional funding to meet that percentage.

Third, is there a characteristic of the disadvantaged class that justifies disparate treatment? We cannot conclude that the class has been harmed, so it is not disadvantaged. The characteristic that justifies disparate treatment of this class is its wealth in relation to other districts. This class has benefited from its financial condition for a number of years.

The fourth factor examines how the characteristics used to distinguish people for disparate treatment are relevant to the purpose that the challenged law purportedly intends to serve. The purpose of the challenged law is to provide some assistance to districts in the transition to cost-based funding while placing a limit upon that assistance. Their relative wealth is relevant to this purpose. The $250,000 cap is justified by the historic wealth of these districts and by the mandate to establish a cost-based funding mechanism. Accordingly, we hold that the classification in the transitional school funding legislation has a rational relationship to a legitimate state interest.

Finally, the appellant asserts that the $250,000 cap is unconstitutional as applied to it. The appellant cites *Board of County Commissioners v. Geringer,* 941 P.2d 742, 748 (Wyo.1997), for the proposition that, in the expenditure of public funds, citizens in one county or area are entitled to have the law function in such a way that public funds are expended equitably. In that case, this Court found that it was unconstitutional for the legislature to refuse funding for the county court in Sublette County while it funded county courts in six other counties which were similarly situated. However, in the case before us, the appellant has been subject to the same standards that were applied to the other members of its class. The formula for funding at 98% of prior years with a $250,000 cap was applied to all the recapture/gray area districts. The appellant has not been singled out. The transitional provisions are not special legislation.

## CONCLUSION

We conclude that § 306(a)(v) does not violate the equal protection provisions of the Wyoming Constitution. It does not interfere with the right to a proper public education. The classification in the law has a rational relationship to a legitimate state interest in making the transition to a cost-based school funding system. The district court's judgment is, therefore, affirmed.