**Arthur HANSEN, Jr., Petitioner,**

v.

**STATE of Wyoming, Respondent.**

**Derek Redstar PAPPAN, Petitioner,**

v.

**The STATE of Wyoming, Respondent.**

**Nos. 94–237, 94–242.**

Supreme Court of Wyoming.

Oct. 18, 1995.

Wyoming Public Defender Program: Sylvia Lee Hackl, State Public Defender; Deborah Cornia, Appellate Counsel; Peter H. Froelicher, Assistant Public Defender; David Gosar, Assistant Public Defender, for petitioners.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Assistant Attorney General, for respondent.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR, and LEHMAN, JJ.

THOMAS, Justice.

In these consolidated cases, brought to this court in each instance by a petition for a writ of review, Arthur Hansen, Jr. (Hansen) and Derek Redstar Pappan (Pappan) seek to inhibit the discretion of the prosecuting attorney and the discretion of the trial court with respect to the prosecution of young offenders as adults in the district court. At the heart of the controversy is the discretion afforded the district attorney to initiate criminal proceedings against a juvenile in the district court or, alternatively, to seek the transfer to district court of a proceeding commenced as a juvenile delinquency proceeding. Hansen attacks the constitutionality of WYO.STAT. § 14–6–203(f)(iv) (1994) as violative of the equal protection, due process, and separation of powers clauses of the Wyoming and United States Constitutions. In addition, Hansen and Pappan assert their right to due process was violated when the trial court failed to assign the burden of proof and a standard of proof during the hearings on their respective motions to transfer. Pappan also argues that the transfer of jurisdiction in his case from juvenile court to district court was an abuse of discretion, while Hansen asserts that the failure to transfer his case from the district court to the juvenile court was an abuse of discretion. We hold that the statutory scheme is constitutional; there is no demonstrable prejudice arising out of the failure to assign the burden of proof prior to any hearing; and there was no abuse of discretion on the part of the trial judge in refusing to transfer Hansen's case to juvenile court or on the part of the trial judge in transferring Pappan's case to the county court from juvenile court for a preliminary examination with the view that the case would be prosecuted in the district court. The Order (transferring jurisdiction) in Pappan's case is affirmed, and the Order Denying Motion to Transfer to Juvenile Court in Hansen's case likewise is affirmed.

In Hansen's Brief of Appellant, this statement of the issues is set forth:

ISSUE I

Did the filing of this case in adult court, pursuant to W.S. 14–6–203(f)(iv) violate Arthur Hansen Jr.'s right to equal protection of the laws?

ISSUE II

Did the filing of this case in adult court, pursuant to W.S. 14–6–203(f)(iv) violate

Arthur Hansen's right to due process under the law?

ISSUE III

Is W.S. 14–6–203(f)(iv) violative of the United States and the Wyoming Constitution's separation of powers clauses.

ISSUE IV

Did the district court abuse its discretion in denying Arthur Hansen Jr.'s motion to transfer his case to juvenile court?

In the Brief of the Appellant filed on behalf of Pappan, the only issues stated are:

ISSUE I

Did the court err by transferring this case from juvenile to adult court?

ISSUE II

Was Appellant denied due process by the failure to assign a known burden of proof governing the transfer hearing?

In the Brief of Appellee (consolidated) of the State of Wyoming, the issues are stated as:

I. Is W.S. § 14–6–203(f)(iv) violative of the equal protection, due process and separation of powers provisions of the Wyoming and United States constitutions?

II. Did the district court abuse its discretion in denying Hansen's motion to transfer him to juvenile court?

III. Did the juvenile court abuse its discretion in transferring Pappan from juvenile to adult court?

On July 12, 1994, Hansen got off work and then went to visit a friend. When he arrived home, at approximately 11:30 p.m., the only person at his home was his stepmother, and the two engaged in an argument. Following the argument, Hansen took a shower, and his stepmother went to bed. At approximately 2:00 a.m. the next morning, the stepmother awoke to discover Hansen on top of her attempting to bind her with a rope. Hansen continued to try to tie her during a five-minute struggle. When he was unable to tie the stepmother, Hansen placed a pillow over her face for some time, in an effort to smother her. At that point, she was exhausted and could not struggle with Hansen any longer. She said to stop, hoping to catch her breath, regain some strength, continue the fight, and escape.

At this break in the struggle, Hansen removed her underwear and penetrated her with his penis until he ejaculated. Even though she had caught her breath, she was unable to escape. After he ejaculated, Hansen put a comforter over her face and attempted to suffocate her for approximately ten more minutes. Finally, Hansen either was thrown off or slipped off the bed and ran from the house. The stepmother telephoned for help. During the investigation, a detective from the sheriff's department located her underwear, a nylon rope, a flashlight, a white sock, and a "folding knife" in her bedroom.

Having fled his home, Hansen later telephoned there, and a deputy sheriff answered the call. Hansen asked the sheriff's officer if he would pick him up because he was freezing. After he was taken into custody, Hansen was advised of his constitutional rights and waived his right to an attorney. During an interview with the detective from the sheriff's office, Hansen admitted being very frustrated and very angry with his stepmother for some time. He said he had thought about raping her previously, but waited until the evening when they argued.

Hansen was charged, by an information filed in district court, with first degree sexual assault in violation of Wyo.Stat. § 6–2–302(a)(i) (1988).[1] Hansen was sixteen years old. Following the filing of the information on July 14, 1994, Hansen moved to transfer the case from district court to juvenile court. Between August 16 and September 26, 1994, four hearings were conducted for the purpose of receiving evidence regarding the seven factors set forth in Wyo.Stat. § 14–6–237(b) (1994). On October 6, 1994, the trial

---

1. Wyo.Stat. § 6–2–302 (1988) defines sexual assault in the first degree as follows:

(a) Any actor who inflicts sexual intrusion on a victim commits a sexual assault in the first degree if:

(i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement;

\* \* \* \* \* \*

court issued its Order Denying Motion to Transfer to Juvenile Court. Hansen's petition for writ of review seeks reversal of that order.

On June 6, 1994, Pappan drank some beer and shared several joints of marijuana with his uncle and a cousin. The uncle told the other two they were going to drive around. As the uncle drove toward Fort Washakie, he told Pappan and the cousin that there were loaded guns in the back of his vehicle. Before they reached Fort Washakie, the uncle stopped the vehicle and told Pappan and the cousin that he planned to seek revenge against officers of the Wind River Police Department. The uncle felt the officers had treated him unfairly on a previous occasion, and he asked Pappan and the cousin if they "wanted to be in or not?" Pappan testified that he and the cousin did not believe the uncle "because he always says stuff like that."

The uncle then drove to the Wind River Police Department where he got out of the vehicle, walked toward the police station, and started shooting at the station. He went inside, then came back out and shouted "[w]ho wants to die tonight?" and "[d]o you guys want to play now?" He shot at two parked police vehicles as he left. During this shooting spree, Pappan had remained in the vehicle, and he hollered at his uncle to come back so they could leave. At that point, a car pulled up, and Pappan and the cousin, who by then were out of their vehicle, got down on their knees. The uncle shot at the car and struck an officer in the right chest area of his bullet-proof vest, causing shrapnel to enter the officer's body in three places and his arm and leg to become numb. Another bullet struck the officer directly.

After the shooting of the officer, Pappan and the cousin got in the vehicle, picked up the uncle, and drove toward Lander. The cousin was driving, and the uncle resumed shooting at officers of the Fremont County Sheriff's Office, who were pursuing them, and officers of the Lander Police Department, who were sent to intercept them. When the ammunition in the guns was exhausted, the uncle handed them to Pappan in the back seat and told him to load them. Pappan did as he was told and, as they approached Lander, Pappan picked up one of the guns and fired out the window of the vehicle. When the three arrived in Lander, Pappan suffered a shot in the back. He threw the gun he had fired out the car window and, when the uncle ran out of ammunition, he told the cousin to stop the vehicle. At that time, all three were arrested.

A petition was filed in juvenile court June 8, 1994, alleging Pappan was a delinquent child, as defined in Wyo.Stat. § 14–6–212 (1986). Pappan was fifteen years old at that time. In the petition, he was charged with five counts of attempted first degree murder in violation of Wyo.Stat. § 6–2–101(a) (1988) and Wyo.Stat. § 6–1–301(a) (1988).[2] The State filed a Motion for Transfer Hearing as provided for in Wyo.Stat. § 14–6–237(a) (1986), and a hearing was conducted on August 17, 1994. On September 30, 1994, the juvenile court entered an order in which it transferred the matter to the County Court of Fremont County for criminal prosecution of Pappan as an adult. In his petition for a writ of review, Pappan attacks that order.

We turn first to the constitutional deficiencies asserted by Hansen because, if valid, they would be dispositive. Hansen contends Wyo.Stat. § 14–6–203(f)(iv) (1994) is uncon-

---

**2.** Wyo Stat. § 6–2–101(a) (1988) provides for murder in the first degree and states:

(a) Whoever purposely and with premeditated malice, or in the perpetration of, or attempt to perpetrate, any sexual assault, arson, robbery, burglary, escape, resisting arrest or kidnaping, or by administering poison or causing the same to be done, kills any human being is guilty of murder in the first degree.

Wyo.Stat § 6–1–301(a) (1988) defines "attempt" as follows:

(a) A person is guilty of an attempt to commit a crime if:

(i) With the intent to commit the crime, he does any act which is a substantial step towards commission of the crime. A "substantial step" is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime; or

(ii) He intentionally engages in conduct which would constitute the crime had the attendant circumstances been as the person believes them to be.

stitutional because it transgresses his right to equal protection and due process and is violative of the separation of powers clauses. The statutory provision he specifically addresses is part of the jurisdictional definition for the juvenile court and is best understood in the context of other pertinent provisions:

(a) The [juvenile] court has general jurisdiction in all matters and proceedings commenced therein or transferred to it by order of the district court concerning:

(i) Any minor alleged to be delinquent, neglected or in need of supervision as defined in W.S. 14–6–201;

(ii) Any minor alleged to have committed a delinquent act before attaining the age of majority;

\* \* \* \* \* \*

(c) Except as provided in subsection (d) of this section, the juvenile court has concurrent jurisdiction in all cases in which a minor is alleged to have committed a criminal offense or to have violated a municipal ordinance.

(d) The juvenile court has exclusive jurisdiction in all cases in which a minor who has not attained the age of thirteen (13) years is alleged to have committed a felony or a misdemeanor punishable by imprisonment for more than six (6) months.

(e) Except as provided in subsection (f) of this section, all cases over which the juvenile court has concurrent jurisdiction shall be originally commenced in the juvenile court but may thereafter be transferred to another court having jurisdiction pursuant to W.S. 14–6–237.

(f) The following cases may be originally commenced either in the juvenile court or in the district court or inferior court having jurisdiction:

(i) Violations of municipal ordinances;

(ii) Misdemeanors for which the maximum penalty does not include imprisonment for more than six (6) months;

(iii) Cases in which the minor has attained the age of seventeen (17) years. The prosecuting attorney shall consider those determinative factors set forth in W.S. 14–6–237(b)(i) through (vii) prior to commencing an action in the district court under this paragraph;

**(iv) Cases in which the minor has attained the age of fourteen (14) years and is charged with a violent felony as defined by W.S. 6–1–104(xii) [§ 6–1–104(a)(xii) ];**

(v) Cases in which a minor who has attained the age of fourteen (14) years is charged with a felony and has previously been adjudicated as a delinquent under two (2) separately filed juvenile petitions for acts which if committed by an adult constitute felonies.

WYO.STAT. § 14–6–203 (1994) (emphasis added).

Hansen invokes the Fourteenth Amendment to the United States Constitution and its provision, "nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." He also invokes the provisions of the Constitution of the State of Wyoming that treat with equal protection including Article 1, Sections 2 and 34, and Article 3, Section 27.[3] In addition, Hansen alludes to Article 1, Section 3 of the Constitution of the State of Wyoming.[4] Hansen pres-

---

**3.** The provisions of the Constitution of the State of Wyoming which are relied upon are:

WYO. CONST. art. 1, § 2:
In their inherent right to life, liberty and the pursuit of happiness, all members of the human race are equal.

WYO. CONST. art. 1, § 34:
All laws of a general nature shall have a uniform operation.

WYO. CONST. art. 3, § 27:
The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: For \* \* \* granting to any corporation, association or individual \* \* [1] any special or exclusive privilege, immunity or franchise whatever \* \* \*. In all other cases where a general law can be made applicable no special law shall be enacted.

**4.** WYO CONST. art. 1, § 3 provides:
Since equality in the enjoyment of natural and civil rights is only made sure through political equality, the laws of this state affecting the political rights and privileges of its citizens shall be without distinction of race, color, sex, or any circumstance or condition whatsoever other than individual incompetency, or unworthiness duly ascertained by a court of competent jurisdiction.

ents an analysis of the statutory provisions leading him to the conclusion that Wyo.Stat. § 14–6–203(f)(iv) results in unconstitutional classification.

Hansen asserts that the statute initially selects a class of those juveniles over fourteen, charged with a violent felony. He contends those over age fourteen are treated differently from those who are thirteen, but have not attained the age of fourteen, pointing out that the latter must first be charged in juvenile court. Those over age fourteen still can be the object of disparate treatment, according to his argument, because the case may be charged in and remain in the juvenile court; the case may be charged in the juvenile court, but made the object of a transfer hearing; or the case may be charged in district court. Hansen also argues that of those charged in the district court some may not receive a transfer hearing, but this last contention is contradicted by the provisions of Wyo.Stat. § 14–6–237(g) (1994):

> (g) If any proceeding commenced in the district court is within the concurrent jurisdiction of the juvenile court, the district court may on motion of any party or on its own motion order any proceeding transferred to the juvenile court. The district court judge may, **after notice and hearing**, find the matter more properly suited to disposition under the provisions of this act. The order of transfer confers upon the juvenile court full jurisdiction in the matter as if originally commenced in juvenile court. (Emphasis added.)

We read this statute to say that, if one charged in district court moves for transfer to juvenile court, there will be a hearing. Certainly that is what occurred in Hansen's case.

Our rule is "that every law must be presumed to be constitutional, with all doubt resolved in its favor * * *." *State v. Stern,* 526 P.2d 344, 347 (Wyo.1974). This rule has been consistently followed. *E.g., Luplow v. State, Jennings v. Currier,* 897 P.2d 463 (Wyo.1995); *Wyoming Coalition v. Wyoming Game and Fish Comm'n,* 875 P.2d 729 (Wyo. 1994); *Johnson v. State Hearing Examiner's*

*Office,* 838 P.2d 158 (Wyo.1992); *Righter v. State,* 752 P.2d 416 (Wyo.1988); *Keser v. State,* 706 P.2d 263 (Wyo.1985); *Sanchez v. State,* 567 P.2d 270 (Wyo.1977). The same proposition is applied to statutory classifications. "'One who assails a classification must carry the burden of showing that it does not rest on a reasonable basis, but is essentially arbitrary.' *Mountain Fuel Supply Company v. Emerson,* Wyo., 578 P.2d 1351, 1354–55 (1978)." *Hoem v. State,* 756 P.2d 780, 782 (Wyo.1988). Furthermore, with respect to Article 1, Section 2 of the Constitution of the State of Wyoming, we have said that the rights there protected are not absolute, but are subject to state regulation in the public interest. *State v. Langley,* 53 Wyo. 332, 84 P.2d 767 (1938). This constitutional provision does not demand that the law treat everyone with absolute equality, but it does prohibit arbitrary and invidious discrimination. *Cavanagh v. State,* 505 P.2d 311 (Wyo.1973).

We could rest our resolution of the constitutional issues upon what we said in *Menapace v. State,* 768 P.2d 8, 11 (Wyo.1989):

> Realistically, the only inquiry left for this court is whether we should review the Jahnke [*Jahnke v. State,* 692 P.2d 911 (Wyo.1984)] dispositive conclusion of constitutionality. Reexamination by a review of more current cases does not diminish the validity of the procedural and constitutional conclusions on this issue in that case. *Trolinger v. State,* 736 P.2d 168, 170 (Okl. Cr.1987) as citing for support *McGowan v. Maryland,* 366 U.S. 420; 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). See likewise, *People v. Thorpe,* 641 P.2d 935 (Colo.1982), where prosecutorial discretion was directly considered and constitutionally approved.
>
> Transfer process determinants of confidentiality and burden of proof, as well as court of jurisdiction, have been uniformly held to constitutionally rest within legislative discretion. *Jahnke,* 692 P.2d 911; *Mullin v. State,* 505 P.2d 305 (Wyo.), cert. denied 414 U.S. 940, 94 S.Ct. 245, 38

---

We are puzzled by reliance upon this provision which clearly seems to touch only upon political

rights and privileges as distinguished from other personal rights or privileges.

L.Ed.2d 166 (1973); *People v. Young*, 124 Ill.2d 147, 124 Ill.Dec. 516, 529 N.E.2d 497 (1988); *Com. v. Wallace*, 495 Pa. 295, 433 A.2d 856 (1981); *State v. Jacobs*, 144 Vt. 70, 472 A.2d 1247 (1984). The Wyoming legislature has clearly and validly established the courts and transfer processes for the trial of criminal offenses committed by persons under the age of majority.

In *Jahnke v. State*, 692 P.2d 911, 928–29 (Wyo.1984), we said:

> The discretion which is vested in the prosecutor by our statute to proceed against a juvenile in either the juvenile court or as an adult in the district court does not violate any constitutional requirements. There is no constitutional right to be tried as a juvenile. *United States v. Quinones*, 516 F.2d 1309 (1st Cir.1975), cert. denied 423 U.S. 852, 96 S.Ct. 97, 46 L.Ed.2d 76 (1975); *Cox v. United States*, 473 F.2d 334 (4th Cir.1973), cert. denied 414 U.S. 869, 94 S.Ct. 183, 38 L.Ed.2d 116 (1973); *Woodard v. Wainwright*, 556 F.2d 781 (5th Cir.1977), cert. denied 434 U.S. 1088, 98 S.Ct. 1285, 55 L.Ed.2d 794 (1978); *Russell v. Parratt*, 543 F.2d 1214 (8th Cir.1976); *United States v. Hayes*, 590 F.2d 309 (9th Cir. 1979); *United States v. Bland*, 153 U.S.App.D.C. 254, 472 F.2d 1329 (1972), cert. denied 412 U.S. 909, 93 S.Ct. 2294, 36 L.Ed.2d 975 (1973); *Bailey v. State*, 269 Ark. 397, 601 S.W.2d 843 (1980); *People v. Thorpe*, Colo., 641 P.2d 935 (1982); *Johnson v. State*, Fla., 314 So.2d 573 (1975); *State v. Purdy*, 228 Kan. 264, 615 P.2d 131 (1980); *People v. Sprinkle*, 56 Ill.2d 257, 307 N.E.2d 161 (1974), cert. denied 417 U.S. 935, 94 S.Ct. 2650, 41 L.Ed.2d 239 (1974); *State v. Doe*, 91 N.M. 506, 576 P.2d 1137 (1978); *Vega v. Bell*, 47 N.Y.2d 543, 419 N.Y.S.2d 454, 393 N.E.2d 450 (1979); *State v. Grayer*, 191 Neb. 523, 215 N.W.2d 859 (1974); *Jones v. State*, Okla.Crim.App., 654 P.2d 1080 (1982); *State, in the Interest of Atcheson*, Utah, 575 P.2d 181 (1978); and *State v. Hodges*, 28 Wash.App. 902, 626 P.2d 1025 (1981). Any decision to initiate criminal proceedings is vested in the prosecuting attorney, and the decision is discretionary. *Confiscation Cases*, 74 U.S. (7 Wall.) 454, 19 L.Ed. 196 (1869); *State v. Faltynowicz*, Wyo., 660 P.2d 368

(1983) (Thomas, J., concurring). Since one does not have an inherent right to be prosecuted as a juvenile but that is a privilege granted by the legislature, the legislature can restrict or qualify the privilege as it sees fit, so long as there is not involved any arbitrary or discriminatory classification. *Woodard v. Wainwright*, supra, 556 F.2d at 785. See, e.g., *Lamb v. Brown*, 456 F.2d 18 (10th Cir.1972).

The legislature of the State of Wyoming has chosen to vest in the prosecuting attorney the discretion with regard to what charges to file and in what court they should be filed. There may be circumstances which would justify judicial review of the prosecutorial discretion, but in the absence of such suspect factors as race, religion or other arbitrary classification, the exercise of discretion by the prosecutor in deciding whether to charge as a juvenile or adult involves no violation of due process or equal protection of the law. *United States v. Bland*, supra, 153 U.S.App. D.C. 254, 472 F.2d at 1337; *People v. Thorpe*, supra, 641 P.2d at 939.

Concededly, the statute has been amended by the addition of sub-subsections (iv) and (v) to Wyo.STAT. § 14–6–203(f) after *Menapace* was decided. The statute had been amended to incorporate the philosophy found in subsection (f) after *Jahnke* was decided. In holding that Wyo.STAT. § 14–6–203(f)(iii) was constitutional, the *Menapace* court did not find it necessary to rely upon the last sentence providing for consideration by the prosecuting attorney of the factors set forth in Wyo.STAT. § 14–6–237(b)(i) through (vii). We held that a classification of a minor who has attained the age of seventeen is constitutional, although that statutory provision could lead to all the disparate results claimed by Hansen. We conclude sub-subsection (iv) is no different in this regard. As to the claim that the statute is unconstitutional because all minors who have attained the age of fourteen and are charged with the commission of a violent felony may not be tried in the district court, this argument is addressed to the disparity which may result from the exercise of prosecutorial discretion. The same exercise of prosecutorial discretion was

upheld in *Jahnke* and *Menapace*. All those in the statutory classification are subject initially to the same discretion and, at that juncture, all in the class are treated alike. *Bell v. State*, 693 P.2d 769 (Wyo.1985).

Hansen, after the oral argument, called our attention to *State v. Mohi*, 901 P.2d 991 (Utah 1995), which has not yet been released for publication in the permanent law. In that case, a divided Supreme Court of Utah struck a statute that afforded discretion to the prosecutor to present sixteen- to seventeen-year-old juveniles charged with capital or first degree felonies in district or circuit court or to proceed in juvenile court. There is no indication that the discretion of the Utah prosecutors was subject to anything like the Wyoming transfer process. We read that decision as distinguishing the Wyoming statutory scheme. Further, the choice made by the Utah court infringes upon prosecutorial discretion.

 Hansen contends in a different argument that WYO.STAT. § 14–6–203(f)(iv) violates our constitutional provision relating to the separation of powers.[5] The thrust of our resolution of that issue also supports our choice to maintain, rather then limit, prosecutorial discretion. We have held, like the Supreme Court of the United States, that the decision of a prosecutor regarding what charge or charges to file, whether or not to dismiss charges, or to accept a plea to a lesser offense does not violate the doctrine of separation of powers. In *Billis v. State*, 800 P.2d 401, 417–18 (Wyo.1990), quoting *Jahnke* and *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668–69, 54 L.Ed.2d 604 (1978), we summarized our rule and that of the Supreme Court of the United States:

> In *Jahnke*, we upheld against a separation of powers challenge the constitutionality of W.S. 14–6–203(c) (1977), which placed the decision as to the appropriate court in which to prosecute a juvenile within the discretion of the prosecutor as an officer of the executive department. After

noting that there is no constitutional right to be tried as a juvenile, this court stated:

> Any decision to initiate criminal proceedings is vested in the prosecuting attorney, and the decision is discretionary. *Confiscation Cases*, 74 U.S. (7 Wall.) 454, 19 L.Ed. 196 (1869); *State v. Faltynowicz*, Wyo., 660 P.2d 368 (1983) (Thomas, J., concurring). Since one does not have an inherent right to be prosecuted as a juvenile but that is a privilege granted by the legislature, the legislature can restrict or qualify the privilege as it sees fit, so long as there is not involved any arbitrary or discriminatory classification. *Woodard v. Wainwright*, [556 F.2d 781, 785 (5th Cir. 1977) ]. *See, e.g., Lamb v. Brown*, 456 F.2d 18 (10th Cir.1972).

*Jahnke*, 692 P.2d at 929.

We also added that

> [t]he legislature of the State of Wyoming has chosen to vest in the prosecuting attorney the discretion with regard to what charges to file and in what court they should be filed. There may be circumstances which would justify judicial review of the prosecutorial discretion, but in the absence of such suspect factors as race, religion or other arbitrary classification, the exercise of discretion by the prosecutor in deciding whether to charge as a juvenile or adult involves no violation of due process or equal protection of the law.

*Id.* (citations omitted).

These principles relating to the prosecutor's power to control the prosecution of a criminal charge were earlier expressed by the United States Supreme Court in this way:

> In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring * * * generally rests entirely in

---

5. WYO. CONST., art. 2, § 1 provides:

The powers of the government of this state are divided into three distinct departments: The legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted.

his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" so long as "the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 [1962].

*Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668–69, 54 L.Ed.2d 604, 610–11 (1978).

We choose not to follow the Utah court in *Mohi,* and adhere to our traditional position that the availability of prosecutorial discretion does not result in an unconstitutional classification.

█ Because the statute was amended following our decisions in *Jahnke* and *Menapace,* we consider further Hansen's argument that the provision of WYO.STAT. § 14–6–203(f)(iv) creates a suspect class of those juveniles over fourteen who are alleged to have committed serious crimes, and the application of strict judicial scrutiny is demanded. The Supreme Court of the United States has held age is not a suspect class requiring the strict scrutiny analysis. *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). We also have rejected the strict scrutiny standard in considering a statute which provided for loss of one's driver's license based on an age classification. *Johnson,* 838 P.2d 158. In *Johnson,* we held that the statute providing for loss of a driver's license based on age was unconstitutional because it lacked rational differentiation and violated the guarantees of equal protection.

In *Johnson,* which we followed in *Allhusen v. State By and Through Wyoming Mental Health Professions Licensing Bd.,* 898 P.2d 878 (Wyo.1995), we adopted this test for analyzing equal protection claims posited under the state constitution:

First, what class is harmed by the legislation and has that group been subjected to a "tradition of disfavor" by our laws? * * * Second, what is the public purpose that is being served by the law? Third, what is the characteristic of the disadvantaged class that justifies the disparate treatment? And lastly, how are the characteristics used to distinguish people for such disparate treatment relevant to the purpose that the challenged laws purportedly intend to serve?

*Johnson,* 838 P.2d at 166.

*Jahnke* and *Menapace* dispel the notion that juveniles over the age of fourteen, charged with violent felonies have been subjected to a tradition of disfavor. Rather, they have been the recipients of legislative grace by permitting them to be the object of juvenile proceedings although that grace is limited by prosecutorial discretion. The public purpose served by the law is accountability for criminal conduct and the safety and protection of the community, the same purpose served by the criminal code generally. The characteristic of the class which justifies the treatment is the commission of the violent felony demonstrating unsuitability for the legislative grace. Finally, the attainment of the age of fourteen coupled with the commission of the violent felony is relevant to the purposes served by the criminal code. We perceive logic in setting the minimum age at fourteen because of the provision of the law which provides exclusive jurisdiction in the juvenile court for those who have not attained the age of thirteen. The additional year eliminates any equivocation over whether the age at the time of the commission of the offense or at the time the charges are brought is to govern the filing of the case in the district court.

We are satisfied that the application of the test articulated in *Johnson* supports the conclusion that Hansen's right to equal protection was not violated. That result is consistent with our prior decisions in which we examined the question of whether prosecutorial discretion to proceed in juvenile or district court infringes on constitutional requirements. We follow our decisions in *Jahnke* and *Menapace,* and hold that WYO.STAT. § 14–6–203(f)(iv) does not infringe upon Hansen's constitutional right to equal protection of the laws.

We turn then to Hansen's contention that Wyo.Stat. § 14–6–203(f)(iv) deprives him of his right to due process. He urges that the failure to afford him a hearing prior to the institution of the criminal proceedings in district court amounts to a denial of due process. We hear this argument as a claim of a denial of substantive due process as well as procedural due process. In addressing this argument, we return to the proposition that "[t]here is no constitutional right to be tried as a juvenile." *Jahnke,* 692 P.2d at 928. We also adopted this language in that case:

> As the Court of Appeals for the District of Columbia said in *United States v. Bland,* supra, 472 F.2d at 1337:
>
> > "We cannot accept the hitherto unaccepted argument that due process requires an adversary hearing before the prosecutor can exercise his age-old function of deciding what charge to bring against whom. Grave consequences have always flowed from this, but never has a hearing been required."

*Jahnke,* 692 P.2d at 929.

Juvenile status is a privilege granted by the legislature, and the legislature may attach whatever reasonable conditions it chooses without offending the principles of due process. This statute does afford a juvenile a full evidentiary hearing regarding the issue of transfers to juvenile court. The proceeding also encompasses the due process protections set out in Wyo.Stat. §§ 14–6–222 to –224 (1994), which are adopted by reference in Wyo.Stat. § 14–6–237(a).[6]

The record demonstrates all of the statutory procedures and protections were available to Hansen. Four different hearings were held in the district court with respect to the motion to transfer. Hansen was represented by his attorney. He not only testified in his own behalf, but presented the testimony of his father; a psychiatrist who had examined him; and an attorney who specialized in juvenile matters. He had the opportunity to cross-examine all of the State's witnesses. In addition, he produced three exhibits to support his transfer motion. The district court was sufficiently concerned about this matter that a continuance was granted to obtain testimony from the Wyoming Director of Corrections. The satisfaction of the due process requirements by the district court is clear in this record.

Hansen theorizes he and other youths similarly situated may be deprived of a transfer hearing because he reads the statute as pro-

---

6. The statutes provide for due process and state in pertinent part:
Wyo.Stat. § 14–6–222:
(a) At their first appearance before the court the child and his parents, guardian or custodian shall be advised by the court of their right to be represented by counsel at every stage of the proceedings including appeal, and to employ counsel of their own choice.
\* \* \* \* \* \*
Wyo.Stat. § 14–6–223:
(a) A child alleged to be delinquent may remain silent and need not be a witness against or otherwise incriminate himself, whether before the court voluntarily, by subpoena or otherwise.
(b) A party to any proceeding under this act is entitled to:
(i) A copy of all charges made against him;
(ii) Confront and cross-examine adverse witnesses;
(iii) Introduce evidence, present witnesses and otherwise be heard in his own behalf; and
(iv) Issue of process by the court to compel the appearance of witnesses or the production of evidence.
\* \* \* \* \* \*
Wyo.Stat. § 14–6–224:

(a) Unless a jury trial is demanded, hearings under this act shall be conducted by the court without a jury in an informal but orderly manner and separate from other proceedings not included in W.S. 14–6–203. The district attorney shall present evidence in support of the petition and otherwise represent the state. If the allegations in the petition are denied, adjudicatory and disposition hearings shall be recorded by the court reporter or by electronic, mechanical or other appropriate means.
(b) Except in hearings to declare a person in contempt of court, the general public are excluded from hearings under this act. Only the parties, counsel for the parties, jurors, witnesses and other persons the court finds having a proper interest in the proceedings or in the work of the court shall be admitted. If the court finds it necessary in the best interest of the child, the child may be temporarily excluded from any hearing except while evidence is being received at an adjudicatory hearing in support of the allegations of his delinquency or need for supervision.
\* \* \* \* \* \*

viding for a hearing at the discretion of the district judge. He invokes *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), and *Application of Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), in support of his argument that a hearing is required before the decision is made to charge a juvenile in the district court. Our review of *Kent* reminds us that it furnished the seven factors that the legislature incorporated in Wyo.Stat. § 14–6–237(b), pursuant to which the district court weighed its decision. Wyo.Stat. § 14–6–237(b) provides:

(b) The court shall order the matter transferred to the appropriate court for prosecution if after the transfer hearing it finds that proper reason therefor exists. The determinative factors to be considered by the judge in deciding whether the juvenile court's jurisdiction over such offenses will be waived are the following:

(i) The seriousness of the alleged offense to the community and whether the protection of the community required waiver;

(ii) Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;

(iii) Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons especially if personal injury resulted;

(iv) The desirability of trial and disposition of the entire offense in one (1) court when the juvenile's associates in the alleged offense are adults who will be charged with a crime;

(v) The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living;

(vi) The record and previous history of the juvenile, including previous contacts with the law enforcement agencies, juvenile courts and other jurisdictions, prior periods of probation to this court, or prior commitments to juvenile institutions;

(vii) The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile (if he is found to have committed the alleged offense) by the use of procedures, services and facilities currently available to the juvenile court.

Those statutory factors manifest a clear legislative adoption of the substantive due process requirements suggested by *Kent*. *Gault* does not require a hearing prior to the commencement of criminal proceedings in the district court. Instead, it provides juveniles in delinquency proceedings the rights which are recognized as constitutional due process under the Fourteenth Amendment, including a notice of the charges, right to counsel, right of confrontation at cross-examination, and privilege against self-incrimination. We are satisfied that Hansen is in no position to attack the constitutionality of the statute because he theorizes someone else might not be afforded a hearing. As we noted earlier, we read the statute as requiring a hearing if a motion to transfer is made.

■ We hold that the due process guarantees do not mandate a hearing for a juvenile accused of a violent felony before the prosecutor can file the charges in the district court. The motion for a transfer hearing was granted, and the district judge carefully weighed the statutory factors after receiving testimony from witnesses presented by the parties. Hansen has failed to show any prejudice attributable to the procedure followed, and we do not find persuasive his theoretical argument that he might have been prejudiced.

■ In a final constitutional contention, Hansen asserts that Wyo.Stat. § 14–6–203(f)(iv) violates the constitutional provisions requiring separation of powers. He argues that the statute delegates authority of the legislative branch to the prosecutor, who is an official of the executive branch, because it fails to set out standards for the prosecutor to follow. Hansen argues that *Jahnke* does not apply in this case because Wyo.Stat. § 14–6–203(f)(iv) was not in existence at the time *Jahnke* was decided, and there the court was not presented with this delegation argument. The Wyoming Constitution does

provide for the traditional separation of powers in Article 2, Section 1. We do not understand *Jahnke* to be so narrow that it applies only to Wyo.Stat. § 14–6–203(c) (1977) as Hansen argues. We hold that, in this instance, the prosecutor properly followed the statute and did not arbitrarily or discriminatorily file the charges against Hansen in district court. Furthermore, we emphasize that the prosecutor's discretion is not unfettered because of the availability of the transfer motion to an accused juvenile. We hold that the statutory scheme in Wyoming, under the federal and state constitutions, satisfies the requirements of equal protection of the law and provides both substantive and procedural due process. We also hold that these statutes do not violate the separation of powers clause of the state constitution.

 We proceed to consider the claim that the statute is defective in failing to assign a burden of proof. Pappan contends, without any articulation of specific prejudice, that in the absence of any pre-hearing standard for the burden of proof, the transfer process from juvenile court to district court is constitutionally infirm. He also asserts that the federal standard of clear and convincing evidence used in transfer matters should be adopted. Hansen joins with Pappan in the presentation of this argument.

 The statutory procedure set forth in Wyo.Stat. §§ 14–6–222 to –224 does not require the court to assign the burden of proof prior to a transfer hearing, nor do we find it to be necessary. We are in accord with the proposition adopted by the Eleventh Circuit Court of Appeals that the burden of persuasion may be judicially or legislatively assigned to a specific party with respect to a particular fact. *Alabama By–Products Corp. v. Killingsworth*, 733 F.2d 1511 (11th Cir. 1984). In Pappan, the juvenile court, and in Hansen, the district court, assigned the burden of persuasion to the State. The State has acquiesced in the assumption of that burden.

In the context of due process, we conclude that transfer motions are similar to other pre-trial motions in criminal cases. In *Hall v. State*, 851 P.2d 1262 (Wyo.1993), we held that the State must assume the burden of establishing by a preponderance of the evidence that immunity was not extended to a defendant after the defendant meets the burden of presenting a *prima facie* showing of the grant of such immunity. We also have assigned to the State the burden of establishing by a preponderance of the evidence in a pre-trial hearing that consent and a confession were voluntarily furnished. *Burk v. State*, 848 P.2d 225 (Wyo.1993). The State, as the party seeking to show competence to stand trial, assumes the burden to demonstrate competency by a preponderance of the evidence. *Loomer v. State*, 768 P.2d 1042 (Wyo.1989).

 The phrase "burden of proof" is applied to two related, but different, concepts which occur in connection with pre-trial hearings. The burden of producing evidence is assigned to one party or the other and, likewise, the burden of persuasion is assigned to one party or the other. The interrelation and dynamics of these concepts is described in 1 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 62, at 301 (2d ed. 1994):

> To say that a party bears the burden of producing evidence is to say she runs the risk of losing automatically (on a motion to dismiss or for judgment as a matter of law) if she does not offer sufficient evidence to enable a reasonable person to find in her favor. At the outset, usually the party who bears the burden of persuasion also bears the burden of production. * * *

> To say that a party bears the burden of persuasion (or the risk of nonpersuasion) is to say she can win only if the evidence persuades the trier of the existence of the facts that she needs in order to prevail. Ordinarily that means that she wins only if, on the basis of the evidence, the facts seem more likely true than not. Perhaps because this burden operates at the end of trial, courts often say it never "shifts." (Footnote omitted.)

In both of these cases, the State was assigned the burden of persuading the court that the evidence supported the factors justifying the trial of the juvenile in district court. The burden of producing evidence appropri-

ately is assigned to the party seeking relief. In Pappan's case, that was the prosecuting attorney who moved to transfer from juvenile court to district court. In the case of Hansen, that burden of producing evidence belonged to Hansen who moved to transfer the case from district court to juvenile court.

We reiterate that, in both of these pre-trial hearings, the court and the parties clarified the burden of persuasion prior to the end of the respective hearings. We also have noted the concession of the State that the burden of persuasion as to the court in which the case should be tried is assigned to the State. In their respective hearings, Pappan and Hansen both presented testimony and exhibits on their behalf. Once the burden of persuasion by a preponderance of the evidence was assigned to the State, neither Pappan nor Hansen suggested that more evidence should be offered, nor has either been able to articulate any prejudice resulting from the assignment of the burden of persuasion by these respective courts.

We do not accept Pappan's suggestion that we should adopt clear and convincing evidence as the standard of proof even though he argues that is required in transfer hearings in the federal jurisdiction. We perceive this argument as an effort to constrain the prosecutorial discretion we have recognized. The State is charged with the prosecution of criminal acts. WYO.STAT. § 7-1-106 (1987). It has the duty to pursue criminal cases and, in the instance of juveniles charged with violent felonies, the statute clearly affords the prosecuting attorney the discretion to select the juvenile court or the district court as the appropriate forum. WYO.STAT. § 14-6-203(f)(iv). The prosecutor's discretion is not unfettered because of the procedure pursuant to which a juvenile can seek a transfer from district court to juvenile court and the requirement that the prosecutor must proceed under the statute by motion to transfer to district court if the case is filed in the juvenile court. WYO.STAT. § 14-6-237(a). The legislature has afforded the safeguard of a pre-trial hearing while, at the same time, affording discretion to the prosecutor to select the initial forum. The normal rule, on pre-trial motions in criminal cases, is that the burden of persuasion is by a preponderance of the evidence. Requiring a higher standard would go beyond what the legislature has imposed with respect to prosecutorial discretion. We are satisfied the standard of proof in transfer motions is by a preponderance of the evidence.

 We then turn to the contentions of Pappan and Hansen that the court in each instance was guilty of an abuse of discretion. Both trial courts carefully considered all of the evidence produced at the transfer hearings. The judges were meticulous in following the statutory factors relating to the determination of the appropriate court for trial. Decisions relating to the transfer of criminal proceedings from juvenile court to district court and from district court to juvenile court are within the sound discretion of the court. That decision will not be reversed absent an abuse of discretion. *Menapace.* An abuse of discretion often has been defined by this court as "an error of law committed by the court under the circumstances." *Martinez v. State*, 611 P.2d 831, 838 (Wyo.1980). *See Garcia v. State*, 777 P.2d 603, 607 (Wyo. 1989). More precisely, we have said that an abuse of discretion may be found when the decision of the court, or the decision-making process, exceeds the bounds of measured reason in light of those matters properly before the court. *Curl v. State*, 898 P.2d 369 (Wyo.1995); *Duffy v. State*, 730 P.2d 754 (Wyo.1986). We also have spoken in this context of a test of whether the court could reasonably conclude as it did. *Candelaria v. State*, 895 P.2d 434 (Wyo.1995); *Gailey v. State*, 882 P.2d 888 (Wyo.1994).

In Pappan's case, the record demonstrates testimony with respect to all seven of the factors articulated in WYO.STAT. § 14-6-237(b). The Superintendent of the Wyoming Boys School testified on behalf of the State and described the four types of programs available through the school. He discussed the average length of stay, described a new program that had recently been instituted, and recommended that new program for Pappan. He also testified that he was not optimistic about the success of a Native American with a substance abuse problem

because of ineffective supervision following any incarceration.

Pappan's mother stated he had voluntarily asked for, and received, drug and alcohol abuse treatment; he had been involved in taking a friend's car without permission; he had been arrested for two curfew violations; he knew right from wrong; and she believed him to be intelligent although his grades had dropped after the fifth grade. She advised the court that he got along with her and his two sisters, and he had attended six of eight counseling sessions required by the probation he was serving at the time of the shooting escapade. She stated she was willing to relocate with him, and insurance would pay for a substantial portion of treatment. The consulting psychologist told the court there might be tribal funds available to assist in the treatment program, although Pappan asserts in his brief that the court was advised the funds were available.

The same psychologist had evaluated Pappan, and recommended he remain in the juvenile system. His testing disclosed that Pappan was "significantly immature," but "not psychologically incomplete." When queried about what the evaluation disclosed concerning Pappan's immaturity, he said the result was, "Very immature, very underdeveloped. It is especially not anti-social, not all aggressive, but it is very immature." The psychologist recommended a plan which would include incarceration at the Wyoming Boys School followed by residential treatment for mildly habit-disordered children. His testimony did not agree with the view of the Superintendent recommending that Pappan should be in the new program, but he did explain that the State has very limited adolescent treatment resources. He was concerned Pappan would attach to negative figures in a long-term incarceration, and he suggested Pappan should be isolated from negative role models. He also recommended treatment for chemical dependency, but he voiced concerns about the effectiveness of drug and alcohol abuse treatment programs for juveniles in Wyoming. He did not believe Pappan would have been involved in this event in the absence of marijuana or alcohol and, in his opinion, negative consequences would ensue if Pappan were to be treated as an adult.

The psychologist stated, in his opinion, that three factors affected success or failure of Native Americans in rehabilitation situations. Those are the degree of substance abuse involvement, the degree of family support, and the degree of community support, meaning special community services. He testified that the community services on the reservation were underfunded and understaffed, and there was a lack of formal treatment services.

At the end of the transfer hearing, the judge reviewed the statutory factors. She spoke specifically to each factor as to whether it favored the State or Pappan. The court then took the matter under advisement and issued an order transferring the case from juvenile court to district court. That order included this language:

The Court has considered the factors as set forth in the above mentioned statute [Wyo.Stat. § 14–6–237] and has attempted to weigh them in accordance with the goals and objectives of the juvenile court and finds that factors i, ii, iii, and iv as set forth in § 14–6–237(b) weigh heavily in favor of transferring this matter to the District Court.

Although it appears to the Court from the report received and prepared by the Wyoming State Hospital, and from the testimony of [the psychologist] that this juvenile is immature, that factor is outweighed by the record and previous history of this juvenile, but most importantly the Court finds that factor number vii, that is "prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile by the use of procedure, services and facilites [sic] available to the juvenile court" are not extant in this case. The Court finds that the testimony of [the psychologist] (who was called by the juvenile) indicated to this Court that because of the degree of substance abuse involvement of this minor along with a lack of community support with "under funded and under staffed" or nonexistent supervision by Tribal Social Services as well as lack of formal treatment services would predict

failure of rehabilitation for this minor child in the Juvenile Court.

IT IS THEREFORE ORDERED that this matter be, and it hereby is, transferred to the County Court of Fremont County, Wyoming for criminal prosecution as by law provided.

Hansen also complains of an abuse of discretion on the part of the district court, asserting that the seven factors articulated in WYO.STAT. § 14-6-237(b) were not correctly applied in view of the evidence favoring transfer of the case to the juvenile court. Hansen contends that findings regarding several of the factors were unreasonable and unsupported in the record. In making this argument, he points out that a psychiatrist was retained for the explicit purpose of evaluating Hansen in the light of these factors. He contends that the trial court abused its discretion when it ignored the psychiatrist's opinion that Hansen was not an appropriate candidate for prison. Hansen argues that factors articulated in subsections (i), (v), (vi), (vii) of WYO.STAT. § 14-6-237(b) weigh in his favor; that the factor in subsection (iv) is irrelevant; and that only factors (ii) and (iii) weigh in favor of retaining his case in district court.

Our examination of the record persuades us there was no abuse of discretion. The psychiatrist testified Hansen suffers from Oppositional Deficit Disorder and, because he has this difficulty, he has trouble with authority figures. He expressed his opinion that Hansen is emotionally retarded although he functions intellectually at an appropriate age or better. He testified Hansen has difficulty with the expression of feelings, expression of anger, and his ability to express anger in an appropriate way. He alluded to the problems Hansen had suffered in disruption of his life and placement in foster care. He explained Hansen perceives a need for supervision and for ongoing control by adults, but he is opposed to that control or defiant of it. He did give his opinion that he did not think the general public was at risk because Hansen's rage was directed at intimate people in his life. The psychiatrist recommended an intensive treatment at a residential center, rather than a psychiatric hospital.

Other evidence received by the district court included an assessment prepared in 1991 by a Colorado caseworker, who was an adoption specialist, indicating that Hansen's behaviors include "retaliation against those they [Hansen and his sister] perceive as unfair." An attorney, who is a juvenile specialist, testified he believed Hansen could get some type of treatment not afforded in the adult system. He referred to an out-of-state treatment center that is secure, but also expensive. He speculated about possible programs in Wyoming, but indicated a concern about locating an adolescent program that could provide a sexual offender program. He did point out, "[the Wyoming State Penitentiary] is not an adolescent treatment facility, nor is the penitentiary organized to be such. Even though there can be sex counseling there, it doesn't have an adolescent program."

A representative of the Youth Service Division in the Department of Family Services testified for the State. He pointed out that the Wyoming Boys School has no sex offender program; the Wyoming Youth Treatment Center has a sex offender program, but no security to control aggressive behavior; and he was not aware of any residential and state psychiatric treatment facilities specifically encompassing a sex offender program. In discussing out-of-state facilities, he noted two difficulties exist. First is the lack of monitoring by Wyoming of out-of-state facilities because of case overload resulting in the only contact with those facilities being requests for reports. He also noted a projected budget deficit in court-ordered placements. He articulated concern about the Wyoming Boys School's ability to treat a juvenile sex offender and also with the length of time spent there. He reported that the Wyoming Honor Farm "is one of the most respected group counseling programs in this state for sexual offenders."

The district court continued the hearing to permit the director of the Wyoming Department of Corrections to testify. She testified the Penitentiary and the Honor Farm have specific sex offender programs. She stated youthful offenders are separated from "more seasoned offenders, over the age of 21

* * *" at the Penitentiary. She described the minimum, medium, and maximum units at the Penitentiary, and discussed the programs in those units. She also said counseling programs exist to deal with anger control, violence, and individual counseling. She testified, "I think, again, my response is that a correctional system can provide a certain level of programming, a treatment program, but if the intensity required or desired is more than that, we are not a therapeutic community."

At the final transfer hearing, the judge discussed the seven factors and related the testimony before the court to them. He weighed each of the factors and noted an unsatisfactory history of upbringing for Hansen. The district judge concluded:

So with that in mind, I need to go down the list. And what I'm going to do is skip over number one. I want to come back to that later.

Number two clearly indicates that this child should remain in adult court. This is a very serious offense, committed in an aggressive, violent, premeditated or willful manner. The record from the preliminary hearing is very clear on that matter. I don't need to really elucidate the details any further.

Number three. "Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons especially if personal injury resulted."

Well, this clearly, in my opinion, indicates the matter should stay in adult court. Rape is a personal offense. I can't understand why a person being raped, even though there are no bruise markings, wouldn't be considered to be personal injury. Clearly, rape is one of these cases that falls within item three, and therefore that weighs in favor of retaining this matter in adult court.

Number four. That is irrelevant, and we don't need to worry about that.

Number five. The sophistication and maturity of the juvenile.

I find myself having mixed emotions about this particular factor. It is clear that the defendant in this case is immature in many ways. The thing that comes to mind as a result of this issue, the record that was received in evidence from Colorado regarding how he and his sister were treated, being placed in chicken coup, I don't view that necessarily as being bad. It was the only thing that those parents could do to gain control of these kids. They apparently, when they were on their own, they would ransack the house. I don't know if that's immature. That was about four years ago. It's kind of a curious anomaly in the background of this individual. So what you have, you have on the one hand an individual who is immature in a variety of ways, yet mature enough to commit this type of a crime.

On balance, I find that number five is in a neutral position. I don't really says [sic] it favors or disfavors the individual.

Number six. There is no record of previous history; therefore,—a previous history of the juvenile, and, therefore, it favors sending this case back to juvenile court.

Now, back to number one, and also to number seven. Number one, if it's read literally, the argument that [defense counsel] makes is a good argument. He claims the only danger to the community is to his mother, because he had rage—he had a feeling of rage towards her, and if he would attempt to get away from his mother it would necessarily mean that the community as a while wouldn't have to worry.

It looks to me like the record in this case, particularly the conduct of this defendant and his sister when they lived in Colorado, in the chicken coop episode, it seems to me that whenever this individual is given limitations, regardless of the source—which we have in this case, a limitation in this case by the mother—they're documented—but whenever limitations are placed before this individual it triggers rage.

Therefore, I conclude that number one has been met, that because of the seriousness of the alleged offense to the community, the community itself—that is to say, anybody who might choose to place limitations on this individual—it could be a

school teacher, it could be anybody—if those limitations are severe enough, then this individual is capable of reacting in the way he did.

So, therefore, I conclude that number one—the element of number one, the seriousness of the alleged offense, has been met, and weighs in favor of retaining jurisdiction in adult court.

Number seven is probably the most difficult. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation.

We have a 17-year-old who—I have no idea. The evidence adduced in this proceeding leaves me without any understanding whatsoever as to where this individual would be placed if he were brought into the juvenile system. The Boys School would be good for maybe six months possibly, but it doesn't have the intensive psychiatric criteria that [the psychiatrist] talks about. So, therefore, that's probably an inappropriate placement.

I don't know of any placements in the state of Wyoming that would be appropriate. And furthermore, I don't have any feelings there are any appropriate facilities that would maintain this individual in a secured environment for the duration of his rehabilitation. That's a very speculative question.

Therefore, I don't believe that the juvenile system presents the likelihood of reasonable rehabilitation.

So on balance, I believe the state has carried it's burden—the record shows that—and therefore we should retain this individual in adult court, and I would so order, * * *.

On October 6, 1994, the district court issued its Order Denying Motion to Transfer to Juvenile Court stating:

THE COURT FINDS that after fully and carefully analysis [sic] of the testimony and evidence presented, as such bear upon the factors set forth at W.S. 14–6–237(b), 1977 Republished Edition, the State has carried its burden to the satisfaction of the Court and statute that the matter is best suited for disposition in adult court.

We are satisfied that, in both instances, the judges carefully considered the evidence before the respective courts and specifically related that evidence to the statutory factors. Both Hansen and Pappan argue the evidence should be weighed differently, but that function belongs to the trial court and, unless there is absolutely no evidence to support its conclusions, the manner in which it weighs the evidence does not manifest an abuse of discretion.

We affirm the juvenile court in Pappan's case, and we affirm the district court in Hansen's case.